2003 VT 9

## State of Vermont v. Donald R. Cleary

[824 A.2d 509]

No. 01-289

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed February 7, 2003
Motion for Reargument Denied March 6, 2003

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *William A. Nelson* and *Anna Saxman*, Appellate Defenders, Montpelier, for Defendant-Appellant.

¶ 1. **Morse, J.** Defendant Donald Cleary appeals following his guilty plea to charges of attempted sexual assault and lewd and lascivious conduct. He argues that the district court erred by finding him competent to stand trial contingent upon his receiving the aid of a cognitive facilitator. He also argues that the trial court violated V.R.Cr.P. 11 during the plea hearing by failing to personally address him, establish his knowing and intelligent waiver of his rights, and elicit his acknowledgment of a factual basis for the charges. We conclude that the record supports the district court's competency finding, and that defendant has failed to demonstrate that any Rule 11 deficiencies amounted to plain error. Accordingly, we affirm.

¶ 2. Defendant is a mentally retarded, thirty-six-year-old resident of Hyde Park with an IQ (intelligence quotient) between sixty-five and seventy. While his IQ has remained constant over time, his functional abilities have improved. Defendant lives independently and is employed as a logger.

¶ 3. On three occasions prior to 1991, defendant was charged with criminal offenses but found incompetent to stand trial. Since then, however, he has twice been found competent to stand trial. In 1991, he pled guilty to charges of unlawful trespass, simple assault, and attempted sexual assault. In 1999, he pled guilty to a charge of unlawful trespass based on an incident in which he entered a woman's home. The present charges stem from an alleged sexual assault against his mother.

¶ 4. In connection with those charges, defendant was evaluated by two experts, Dr. Cotton and Dr. Kinsler. Both experts initially found defendant incompetent to stand trial and agreed that the determination was a "close call." Dr. Cotton later changed his opinion and found defendant competent based on material that neither he nor Dr. Kinsler had reviewed before making their initial determinations, including depositions by mental health workers who had supervised defendant and a 1998 competency evaluation by another expert. Dr. Cotton's revised opinion was based on information suggesting that defendant could communicate and cooperate with his mental health supervisors, plan and accomplish goals, and live independently. Dr. Cotton also considered evidence that defendant had willfully manipulated his capacities over time to satisfy his needs.

¶ 5. In a lengthy decision filed on October 16, 2000, the district court found defendant competent to stand trial, noting, among other things, that

(1) he had the mental capacity to communicate with counsel and make choices after weighing the risks and benefits of the various options; (2) he had considerable experience with the criminal justice system; (3) he had a basic understanding of his Fifth and Sixth Amendment rights; and (4) he knew the roles and functions of his attorney, the prosecutor and the judge.

¶ 6. The court cautioned, however, that defendant did not fully understand the function and role of the jury because he had never gone to trial. Nevertheless, the court concluded that, with careful explanation and accommodation, defendant could develop a sufficient understanding of the jury's role at trial, and that with such support he would be competent to stand trial.

¶ 7. Following the competency decision, defendant elected to plead guilty to the charges with the understanding that the State would propose a ten-to-twenty-year sentence. At the November 20, 2000 change-of-plea hearing, the trial court suggested that, given defendant's limitations, the Rule 11 colloquy might be more effective if defense counsel asked the questions, with the court assuring itself that the plea was knowing and intelligent. Defense counsel indicated it was a good idea and proceeded to ask defendant a series of questions. The court also asked questions of its own. Following the colloquy, the court expressed its satisfaction, based on defendant's demeanor and his periodic conferences with his counsel, that defendant understood the terms and consequences of his plea.

¶ 8. The sentencing hearing was held approximately six months later, on May 14, 2001. At the hearing, the court sentenced defendant to a term of ten-to-twenty years for sexual assault, and four-to-five years, to be served concurrently, for the lewd and lascivious conduct. Defendant filed an appeal within thirty days of the sentencing decision.

## I.

¶ 9. Defendant first argues on appeal that the district court erred by finding him competent to stand trial contingent upon him receiving the assistance of a cognitive facilitator. The State denies that the district court made its finding of competency contingent upon the assistance of a cognitive facilitator, but contends, in any event, that defendant's unconditional guilty plea waived his right to any direct appeal of the competency determination.

¶ 10. We first consider the State's latter contention. It is generally true, as the State notes, that a voluntary guilty plea waives all nonjurisdictional defects in the proceedings leading up to the plea. *State v. Armstrong*, 148 Vt. 344, 346, 533 A.2d 1183, 1184 (1987). There are, however, exceptions to this general proposition. See, e.g., *United States v.*

*Muench*, 694 F.2d 28, 34 (2d Cir. 1982) (allowing direct appeal challenging effective assistance of counsel, notwithstanding usual waiver rule). Several courts have specifically held that a "defendant's plea of guilty or no contest does not preclude the defendant from raising on direct appeal the issue of competency to plead or stand trial." *State v. Wead*, 609 N.W.2d 64, 68 (Neb. Ct. App. 2000); see also *People v. Parney*, 253 N.W.2d 698, 700 (Mich. Ct. App. 1977) ("defendant's later guilty plea did not waive the alleged error arising from the prior competency determination"); *People v. Armlin*, 332 N.E.2d 870, 874 (N.Y. 1975) (holding that guilty plea did not waive defendant's right to challenge his competency to stand trial on direct appeal). In a different context, the United States Supreme Court observed that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have a court determine his capacity to stand trial." *Pate v. Robinson*, 383 U.S. 375, 384 (1966) (holding in habeas proceeding that defendant did not waive issue of competence to stand trial by failing to demand competency determination at trial court level). We agree, and thus will treat appeals of competency determinations as an exception to the waiver rule.

■ ■ ¶ 11. We now return to the merits of defendant's competency argument. The test of competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); accord *State v. Bean*, 171 Vt. 290, 294, 762 A.2d 1259, 1262 (2000). The standard of competency required to plead guilty is the same as the standard required to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398 (1993); *State v. Lockwood*, 160 Vt. 547, 554, 632 A.2d 655, 660 (1993).

■ ¶ 12. The crux of defendant's argument is that, instead of determining whether defendant was competent at that time to stand trial, the court made a prediction that with accommodation he would be competent to stand trial. Defendant claims that this finding of a "predictive" competence violates the *Dusky* standard of "present" competence. We disagree. As we have recently noted, "[a] competency determination can require special help or services to enable the defendant to meet the constitutional competency standard." *In re J.M.*, 172 Vt. 61, 69, 769 A.2d 656, 663 (2001). In *J.M.*, we held that a developmentally disabled juvenile could be found competent if given proper support, including the aid of a cognitive facilitator; however, we vacated his guilty plea due to the trial court's failure to engage in the required V.R.Cr.P. 11

colloquy, and the competency determination based on the inadequacy of the court's findings. *Id.* at 63, 71, 769 A.2d at 659, 662-64. There is nothing to prevent a court from qualifying its competency finding and suggesting accommodations that will enable the defendant to better capitalize on his capacity to understand and participate effectively in the proceedings. The court is simply finding the present ability, with the proper tools, to stand trial.

¶ 13.   We also note that, to some degree, defendant's argument misses the mark because the court required that he receive accommodation only in the event that his case went to trial. The court recognized that defendant had the capacity to stand trial, but would need accommodation in doing so. For example, the court opined that in order to testify, defendant would need questions phrased in a way that he could understand, the presence of support people, and frequent breaks. The court did *not* find that defendant was incompetent to enter a plea, or that he required any assistance in order to do so. Because defendant did not proceed to trial, but instead entered a plea, questions regarding the propriety of the order requiring assistance in the event of a trial are only indirectly related to his guilty plea.

¶ 14.   The district court found defendant competent to enter a plea, as well as competent to stand trial if given assistance. In making this determination, the court took into account defendant's previous experience pleading guilty, his knowledge of the legal system, and the expert opinion of Dr. Cotton. In reviewing the trial court's competency determination, we will not overturn findings of the trial court if they are supported by credible evidence and are not clearly erroneous. *State v. Thompson*, 162 Vt. 532, 535, 650 A.2d 139, 141 (1994). Defendant twice had been found competent and had entered guilty pleas. The court found that he could consult rationally with his attorney, receive advice, and reject it if not in his interest, and that he had the ability to decide upon and realize long-term goals, such as the establishment of his private residence and his logging business. Notwithstanding Justice Johnson's view to the contrary, the court's finding is supported by the record, including the statements of mental health supervisors that defendant was able to secure two loans from a bank, purchase a camper, and live independently. Further, the court heard the expert opinion of Dr. Cotton stating that defendant could define the charges against him, understand the seriousness of those charges, describe a possible defense to the charges, define the roles of the defense and prosecuting attorneys, and comprehend a plea bargain. There was sufficient evidence in the record to support the trial judge's finding that defendant was competent to enter a plea.

## II.

¶ 15. Defendant next challenges the sufficiency of the Rule 11 proceeding. Rule 11 is designed to "assure compliance with the requirements set forth in *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969): that a defendant's plea of guilty must be knowing and intelligent." *State v. Yates*, 169 Vt. 20, 25, 726 A.2d 483, 486 (1999). Because a defendant waives important constitutional rights when pleading guilty, the court must review with the defendant the circumstances surrounding the plea to satisfy itself that the plea is voluntarily made with an understanding of its consequences. *Boykin*, 395 U.S. at 242; *In re Hall*, 143 Vt. 590, 594, 469 A.2d 756, 758 (1983). Rule 11(c) requires the court to address the defendant, explaining to him and determining that he understands: the nature of the charge to which the plea is offered; the minimum and maximum penalty; that he has the right to plead not guilty; and that he is waiving his rights against self-incrimination and to a jury trial. V.R.Cr.P. 11(c); *Hall*, 143 Vt. at 594, 469 A.2d at 758. Rule 11(d) requires the court to address the defendant to determine that the plea is voluntary, and Rule 11(f) requires an inquiry into the factual basis or accuracy of the plea. See V.R.Cr.P. 11(d), (f); *Yates*, 169 Vt. at 25, 726 A.2d at 487. When Rule 11 violations are alleged, we require only substantial compliance with the requirements of the rule. See *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1092-93 (1999) (mem.) (we require only substantial compliance when there is collateral attack on validity of plea based on Rule 11 violation); *In re Thompson*, 166 Vt. 471, 475, 697 A.2d 1111, 1113 (1997) (PCR petitioners cannot prevail by merely claiming technical or formal violations of Rule 11).

¶ 16. At the outset, we reject the State's argument that defendant's plea waived his right to a direct appeal challenging the Rule 11 proceeding. In support of its claim that defendant must bring his Rule 11 claims in post-conviction-relief (PCR) proceedings, the State cites *State v. Thompson*, 162 Vt. 532, 650 A.2d 139 (1994). The State's reliance on *Thompson* is misplaced. In *Thompson*, we stated that "an issue under Rule 11 ... alleging violations in taking a plea, *absent plain error*, demands a factual record and opportunity for the trial court to grant relief before this Court may properly review it." *Id.* at 534, 650 A.2d at 140 (emphasis added). Thus, *Thompson* stands for the proposition that a failure to object to the Rule 11 proceedings at the trial court level will result in a plain error standard of review on direct appeal. While the failure to object may result in the factual issues being better developed in a post-conviction setting, it does not bar review of the issue on direct

appeal. This is consistent with the recent holding of the United States Supreme Court that a defendant who fails to object to an error during a plea colloquy may obtain reversal only upon a showing of plain error. See *United States v. Vonn*, 535 U.S. 55, 59 (2002).

¶ 17. In his dissent, Justice Dooley suggests that we reject the nearly unanimous *Vonn* decision and abandon the plain-error standard set forth in *Thompson*. We find nothing in Justice Dooley's arguments that convinces us to overrule our recent precedent on this point. See *State v. Berini*, 167 Vt. 565, 566, 701 A.2d 1055, 1055 (1997) (mem.) ("While not slavish adherents to stare decisis, . . . we generally require more than mere disagreement to overturn a decision, particularly one of such recent vintage.").

¶ 18. Justice Dooley begins by comparing *Thompson* to *State v. West*, 164 Vt. 192, 200-02, 667 A.2d 540, 545-46 (1995), a later case in which we reversed a conviction based on the trial court's failure to comply with V.R.Cr.P. 23(a) before accepting the defendant's decision to waive his right to a jury trial. Here, Justice Dooley equates Rule 11 with Rule 23(a) and declares that the *West* and *Thompson* holdings are inconsistent. Yet, in *West*, this Court did not directly address the issue of whether a plain-error standard is appropriate in Rule 23(a) cases. Justice Dooley, writing for the Court in *West*, rejected the State's substantial-compliance argument by distinguishing the requirements of Rule 11 and Rule 23(a). See *id.* at 201-02, 667 A.2d at 545-46 (although Rule 11 requires district court to advise defendants of specific rights and consequences concerning guilty pleas, it does not require court to read enumerated rights verbatim). Justice Dooley also noted in *West* that although a substantial-compliance standard for Rule 23(a) had been recognized by other jurisdictions and might be appropriate in Vermont, in that particular case there was near total noncompliance with the rule. *Id.* at 202, 667 A.2d at 546. In short, *West* did not consider the question raised here and its holding was not inconsistent with *Thompson*.

¶ 19. Justice Dooley also questions the rationality of a standard that requires defendants who are presumed to be ignorant of their rights to object to the court's failure to adequately advise them of those rights. In response to the obvious counterpoint to this argument, Justice Dooley further states that defense counsel cannot be expected to protect his client's rights because Rule 11 makes it the duty of the court, not defense counsel, who is generally more interested in protecting the plea agreement than his client's rights. We decline to make such assumptions. As the Supreme Court noted in response to a similar argument by the lone dissenter in *Vonn*:

A defendant's right to counsel on entering a guilty plea is expressly recognized in Rule 11(c)(2), and counsel is obliged to understand the Rule 11 requirements. It is fair to burden the defendant with his lawyer's obligation to do what is reasonably necessary to render the guilty plea effectual and to refrain from trifling with the court. It therefore makes sense to require counsel to call a Rule 11 failing to the court's attention. It is perfectly true that an uncounseled defendant may not, in fact, know enough to spot a Rule 11 error, but when a defendant chooses self-representation after a warning from the court of the perils this entails, . . . Rule 11 silence is one of the perils he assumes. Any other approach is at odds with Congress's object in adopting Rule 11 . . . to combat defendants' "often frivolous" attacks on the validity of their guilty pleas, by aiding the district judge in determining whether the defendant's plea was knowing and voluntary and creating a record at the time of the plea supporting that decision.

*Vonn*, 535 U.S. at 73-74 n.10. We agree with this assessment of the situation. Defendants have a right to counsel, and that counsel, in turn, has an obligation to protect his client's rights by objecting if the court fails to engage the defendant in a colloquy required by rule and aimed at assuring that the defendant understand his rights.

¶ 20. Otherwise, as the *Vonn* Court points out, there would be an incentive for defense counsel to ignore a judge's Rule 11 lapses, thereby providing the defendant with a hidden safety valve, or an "insurance policy," to relieve the defendant of his otherwise voluntary plea should he have a change of heart concerning his plea following sentencing. See *id.* at 73 (defendant could relax and wait to see if sentence was satisfactory). Of course, even with the plain-error standard, a defendant may argue on direct appeal, as here, that the Rule 11 deficiencies resulted in a miscarriage of justice or were so glaring and prejudicial as to warrant reversal. See *State v. Tahair*, 172 Vt. 101, 110, 772 A.2d 1079, 1086 (2001). Further, if a defendant has second thoughts about a plea before sentencing, he may seek to withdraw his plea under Rule 32(d). We disagree with Justice Dooley's suggestion that the standard of review in such circumstances — whether the defendant has provided "objective evidence to demonstrate that his subjective misunderstanding was reasonable," *State v. Fisk*, 165 Vt. 260, 263, 682 A.2d 937, 939 (1996) — is equivalent to the standard that the defendant would have to satisfy in a post-conviction-relief proceeding, which places upon the petitioner the additional burden of demonstrating prejudice. See *In re Moulton*, 158 Vt.

580, 584, 613 A.2d 705, 708 (1992) (petitioner must show that he relied upon material and prejudicial misunderstanding when entering plea).

¶ 21. In the end, Justice Dooley states that his "real reason" for dissenting is the "overwhelming evidence" that our limitations on review of alleged Rule 11 deficiencies have eviscerated Rule 11 compliance by our trial courts. *Post*, Dooley, J., dissenting, at ¶ 49. To make this point, Justice Dooley notes that plea proceedings occur "thousands and thousands of times each year" under a system in which ninety-five percent of defendants plead guilty or no contest, and then cites only fourteen cases over thirty years to demonstrate that we have allowed virtually every possible violation of Rule 11, short of total noncompliance. *Post*, at ¶¶ 51, 49. He also points out three cases in which we have reversed convictions based on Rule 11 violations. Further, according to Justice Dooley, an undetermined number of recent DWI enhancement cases heard by three-judge panels demonstrate that it is almost always possible for a defendant to argue that a predicate DWI conviction should not be used for enhancement because of claimed Rule 11 violations.

¶ 22. The evidence cited by Justice Dooley does not demonstrate rampant noncompliance with Rule 11 by the trial courts. But even if it did, we fail to see how Justice Dooley's proposed rejection of the plain-error rule would remedy the situation. Justice Dooley repeatedly states that he does not advocate a standard of review that would result in reversals based on "technical" violations. Indeed, it is unclear what standard of review Justice Dooley would adopt, and how it would differ, as a practical matter, from the standards previously adopted by this Court in direct and collateral appeals concerning alleged Rule 11 violations. As noted above, the Supreme Court has recognized the multitude of frivolous appeals challenging prior pleas based on alleged Rule 11 violations. Justice Dooley's proposal that we abandon the plain-error standard in such cases will only ensure that we will get many more of those appeals, with no better idea of what standard to employ in resolving them.

¶ 23. Without question, Justice Dooley makes some valid points in his dissent. But however well reasoned, his opinion is no more than an arguable alternative to the approach taken by this Court in a relatively recent, unanimous decision — an approach given near unanimous approval only months ago by the United States Supreme Court. In short, there is no legitimate basis at this time in this case for overruling *State v. Thompson*, 162 Vt. 532, 650 A.2d 139 (1994).

¶ 24. We now return to defendant's arguments regarding the Rule 11 colloquy in this case. Defendant cites a myriad of reasons why the proceeding violated Rule 11 and failed to establish the knowing and

intelligent waiver of his rights. He cites the absence of professional support required by the district court for him to be found competent to enter a plea, his lack of knowledge regarding the nature of a jury trial, and his rote "yes/no" answers during the proceeding. He further contends that the court failed to establish a sufficient factual basis for his plea and failed to personally address him as required by the rule.

¶ 25. Defendant's first contention is that the court erred in accepting his plea without providing him with a cognitive facilitator or other professional support. He argues that without such support he was not competent and could not knowingly and voluntarily enter a plea. This argument is without merit. As noted above, the trial court found defendant competent to enter a plea upon credible evidence in the record, and did not condition its finding on the presence of any required support persons to assist him.

¶ 26. Defendant next argues that the record did not indicate that he understood the nature and function of a jury, and thus could not knowingly waive his right to a jury trial. Rule 11(c) requires the court to explain and determine that the defendant understands that by pleading guilty he is waiving his right to a jury trial. Defendant was told that he had the right to a trial, to testify, to have his attorney question witnesses, and that he was waiving these rights by entering a plea. He acknowledged that he understood these rights and that he was waiving them. He further stated that, from what his attorney had told him, he understood the terms of the plea agreement. Having found defendant competent to enter a plea, the court then followed, and substantially complied with, the Rule 11(c) requirements. The court made the determination that defendant understood he was waiving his right to a jury trial, and it was satisfied that such waiver was made knowingly. The court's determination is supported by the record. As noted, the trial court's findings regarding accommodations for defendant were made with regard to defendant's capacity to *participate* in a jury trial, not with respect to his capacity to waive his right to a jury trial.

¶ 27. Defendant further argues that his rote answers of "yes" in response to questioning did not indicate that his plea constituted the knowing and voluntary waiver of his rights. He contends that many developmentally disabled people tend to answer "yes" to a "yes/no" question because they believe that that answer is expected or would meet with approval. Because of this possibility, he argues that his answers gave no assurance that his plea constituted a knowing waiver of his rights. In satisfying itself that defendant understood the consequences of his plea,

the trial court did not rely solely on his "yes" responses. It also considered his demeanor, manner, and the periodic conferences he had with his attorney. During the proceeding, defendant asked questions, explained to the court what constituted the maximum and minimum penalties possible under his plea, and stated that he understood that his lawyer could argue for a lesser sentence. This suggests that he was not merely parroting answers, but understood his rights and the consequences of his plea. The record reflects that defendant understood the nature of his plea, and answered the questions meaningfully.

¶ 28. Defendant next argues that there was an insufficient factual basis to support his plea. Rule 11(f) requires that before accepting a plea of guilty "the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." V.R.Cr.P. 11(f). Defendant contends that the factual basis for the charge came entirely from the record and the court's discussion with the lawyers. He claims that this failed to establish a sufficient factual basis and violated Rule 11(f).

¶ 29. We have held that the plea proceeding of a defendant who stipulated to the factual basis for the charge substantially complies with Rule 11. *Morrissette*, 170 Vt. at 571, 743 A.2d at 1092-93. Here, as in *Morrissette*, defendant stipulated to the facts. At the plea hearing, defendant indicated that he understood the charges after the court read the informations to him. He also acknowledged that the affidavit of the investigating officer had been read to him recently, and that he understood it. Later in the plea proceeding, when the court asked defendant whether he agreed that the affidavit accurately stated what happened, defendant's attorney explained that defendant would agree only that there was an attempted sexual assault, not a completed one as suggested in the affidavit.

¶ 30. Given these facts, defendant's reliance on *State v. Yates*, 169 Vt. 20, 726 A.2d 483 (1999), is misplaced, as is Justice Dooley's suggestion that *Morrissette* effectively overruled *Yates*. The defendant in *Yates* was charged with aggravated domestic assault against his wife and simple assault against his wife's friend, both charges stemming from a single incident. In reversing the trial court's refusal to grant the defendant's motion to withdraw his guilty plea, we noted that the trial court made no mention of the aggravated domestic assault charge during the Rule 11 colloquy and, hence, held that there was a "total" failure on the part of the trial court to conduct a confirming colloquy in which the defendant admitted to the facts underlying the charge. *Id.* at 24, 726 A.2d at 486.

154

Here, in contrast, the factual basis was in effect stipulated to and admitted by defendant. Thus, there was substantial compliance with Rule 11.

¶ 31. Defendant's final argument is that Rule 11 was violated because the required colloquy was conducted in large part by his attorney, instead of the judge. Rule 11 requires the court to advise the defendant and determine that his plea is made knowingly and intelligently by "addressing the defendant personally." V.R.Cr.P. 11(c), (d). Defendant's attorney conducted the bulk of the colloquy at the request of the trial court. The court noted that defendant had limitations and tried to accommodate them by allowing his attorney to conduct most of the colloquy. The attorney stated that this was a good idea and noted that he had recently spent two hours with defendant, indicating an ability to communicate effectively.

¶ 32. "[W]e have always required a practical and functional application of V.R.Cr.P. 11 — not as a technical formula, but rather as a guideline to insure fairness to a defendant in the taking of a plea." *State v. Ploof*, 162 Vt. 560, 563, 649 A.2d 774, 776-77 (1994). The exact form of the Rule 11 colloquy may vary from case to case, depending on matters such as the competence of the defendant and the complexity of the legal issues. *In re Hall*, 143 Vt. at 595, 469 A.2d at 758. Here, the trial court thought that the best way to ensure that defendant understood the consequences of his plea was by allowing his attorney to conduct the colloquy. In such inquiries, " 'matters of reality, and not mere ritual, should be controlling.' " *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997) (quoting *McCarthy v. United States*, 394 U.S. 459, 467 n.20 (1969)). Rule 11 was not intended to strait-jacket judges so as to prevent them from taking into account defendants' individual circumstances and limitations when trying to assure that their constitutional rights are protected. If it reaches the point where it does so, it will be at cross-purposes with its original intent and will have outlived its usefulness. We discern no plain error.

¶ 33. Nor do we think a remand is necessary, as defendant suggests in a letter citing *Vonn*, to give defendant an opportunity to argue before the district court that the entire record demonstrates that his plea in this case was not knowing and intelligent. In denying defendant's motion to withdraw his plea, the trial court was well aware of the record in this case and, specifically, defendant's mental limitations. We see no purpose in remanding this matter for further proceedings.

*Affirmed.*

¶ 34. **Dooley, J.,** concurring and dissenting. I acknowledge that the majority's decision to require plain error to correct Rule 11 deficiencies in direct appeals follows *State v. Thompson,* 162 Vt. 532, 650 A.2d 139 (1994), a decision I joined. I conclude, however, that the plain error holding in *Thompson* is wrong and should be overruled, particularly in light of overwhelming evidence that our decisions have led to regular noncompliance with Rule 11. I, therefore, dissent on this point.

¶ 35. Our law normally requires a contemporaneous objection to court rulings later claimed to constitute such error as to require the reversal of the judgment so that the trial court has the opportunity to correct the error. See *State v. Griffin,* 152 Vt. 41, 45, 563 A.2d 642, 645 (1989); *State v. Curtis,* 145 Vt. 552, 553, 494 A.2d 143, 144 (1985); *In re Mecier,* 143 Vt. 23, 28-29, 460 A.2d 472, 475-76 (1983). In the absence of a contemporaneous objection, we will take action only if an error is "plain": that is, it will result in a miscarriage of justice or is so glaring, grave and serious that it "strikes at the very heart of the defendant's constitutional rights." *State v. Tahair,* 172 Vt. 101, 110, 772 A.2d 1079, 1086 (2001). Our decision in *Thompson* simply applied our preexisting preservation requirement to Rule 11 errors.

¶ 36. There was no examination in *Thompson* of whether it made any sense to require preservation of a Rule 11 error. Although in a slightly different context, we did address these questions, in part, in *State v. West,* 164 Vt. 192, 200-01, 667 A.2d 540, 545-46 (1995), where we found that the trial court failed to comply with V.R.Cr.P. 23(a) in accepting a waiver of the right to trial by jury. As in this case, there was no preservation in the trial court. See *State v. Loveland,* 165 Vt. 418, 420, 684 A.2d 272, 274 (1996) (under *West,* no preservation required to raise violations of V.R.Cr.P. 23(a) on appeal). We noted that the rule contemplates "that only a personal colloquy will enable the court to ensure the defendant understands the critical information on which the waiver must be based." *West,* 164 Vt. at 200, 667 A.2d at 545. We also noted that "[w]e rejected the use of preprinted information on a printed form because of the great risk such information would neither be read nor absorbed." *Id.* We examined whether we should require the kind of presence of prejudice standard that would result from limited plain-error review. We held that a showing of prejudice was unnecessary because of the nature of the right involved and because a prejudice requirement "would be wholly inconsistent with a prophylactic rule created to ensure that a waiver is informed, voluntary and intelligent." *Id.* at 201, 667 A.2d at 546. We added that the "point of [Rule 23(a)], . . . and other such advice or colloquy requirements, is to

create specific requirements to avoid a case-by-case inquiry of the state of mind of the defendant." *Id.*

¶ 37. I think it was obvious that the holdings of *West* and *Thompson* were inconsistent. Certainly, if preservation is not required to raise defects in the advice given before waiving a jury trial and going to trial before a judge, preservation should not be required to raise defects in the advice given before waiver of any trial in favor of a plea of guilty. Indeed, Justice Morse, the author of the majority opinion here, made the point in his dissent in *West*, 164 Vt. at 203 n.*, 667 A.2d at 547 n.*, that Rule 11 and Rule 23(a) should be treated in a consistent manner.

¶ 38. The majority's attempt to distinguish them is both wrong and a misdirection. It is a misdirection because the issue before us is whether preservation is required for direct review, and on this point, the decisions are directly contrary, see *Loveland*, 165 Vt. at 420, 684 A.2d at 274 (*West* "allowed defendants to attack the validity of jury trial waivers in this Court without any preservation below"), and none of the distinctions the majority raises are relevant to the standard of review question. Further, the majority is wrong in concluding that *West* and the Rule 11 decisions cited in it reached different conclusions when substantial compliance was shown; in fact, this Court intentionally didn't reach the substantial compliance question because the jury trial waiver failed even under any application of substantial compliance. *West*, 164 Vt. at 202, 667 A.2d at 546.

¶ 39. Because of the conflict between *West* and *Thompson*, in the few cases in which Rule 11 violations have been raised on direct appeal following *West*, the defendants, usually represented by the defender general's office, have asked us to overrule *Thompson*. In the seven intervening years, we have never relied upon *Thompson* to reach our decision, usually noting the request to overrule it and finding it unnecessary to reach the question. See *State v. Blish*, 172 Vt. 265, 268, 776 A.2d 380, 383 (2001); *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998).

¶ 40. Under *Thompson*, the majority would require defendant to object to the absence of Rule 11 disclosures when they are not made. The required objection would presumably go something like this: "Your honor, I object to your failure to inform me that the maximum sentence for this offense is X years as required by Rule 11(c)(2)." Of course, the only person who can make such an objection is one who knows the information to be provided, thereby showing that the requirements of the rule are wholly unnecessary with respect to the person stating the objection. Put another way, the only person who cannot make this objection is a defendant who is

ignorant of the Rule 11 information, exactly the person for whom the rule was created to protect. Not surprisingly, I can find no instance that any defendant has ever preserved a Rule 11 error, in this state or in any other jurisdiction.

¶ 41. I recognize that objections are generally preserved by lawyers, not clients, and lawyers theoretically could raise a Rule 11 challenge. We are dealing, however, with a rule that is intended to convey critical information to the client, not the lawyer. It is just as wrong if the client is deprived of the necessary information as a result of the action or inaction of the lawyer rather than the inaction or action of the court. Indeed, if it were deemed sufficient that lawyers would fully protect all the rights and interests of a client, we would have no Rule 11, relying instead on the lawyer to convey all the needed information. The United States Supreme Court essentially rejected that choice in *McCarthy v. United States*, 394 U.S. 459 (1969), and we rejected it by requiring the judge, not the defense lawyer, to provide the essential information and determine that defendant understands that information. See V.R.Cr.P. 11(c).

¶ 42. We also have to understand that the vast majority of guilty pleas result from plea negotiations, and the defense lawyer necessarily becomes the advocate for the negotiated settlement. As the recent case of *In re Quinn*, 174 Vt. 562, 564, 816 A.2d 425, 428 (2002) (mem.), demonstrates, the lawyer's actions may be more geared to ensuring the plea agreement ·is consummated than to protecting the rights of the client. I find it unlikely that a defense lawyer would be seeking fuller and more detailed Rule 11 disclosures; again, I can find no record that lawyer preservation of an objection to a Rule 11 error has *ever* occurred. Put another way, I know of no case in which the lawyer made the comparable objection to that described above: "Your honor, I object to your failure to inform my client that the maximum sentence for this offense is X years as required by Rule 11(c)(2)." If the lawyer wanted the client to know this information, the lawyer would tell the client directly.

¶ 43. The majority essentially sticks its head in the sand on this point. It says that the lawyer has an obligation to protect the rights of the client, as if saying so will make it happen. Yet, it knows that in case after case that has come to this Court, the lawyer has never made the objection that it says it is the "obligation" of the lawyer to make, and that the only consequence of the failure to make that objection is that the *client* will lose rights. Given the very few instances in which Rule 11 questions have come here on direct appeal, and the minuscule chance of success for Rule 11 appeals as discussed below, I find incredible the majority's charge that

defense lawyers are failing to make the objection to provide a "hidden safety valve" to the client.

¶ 44. I also recognize that under V.R.Cr.P. 32(d) a defendant might attempt to withdraw a plea of guilty before sentencing because of a violation of Rule 11. In the past, we required the discretion provided by Rule 32(d) to be exercised liberally in favor of allowing a plea withdrawal if the motion was made before sentencing. See Reporter's Notes, V.R.Cr.P. 32(d). Despite the opportunity under Rule 32(d), I doubt many defendants who are unaware of the information the court is supposed to provide under Rule 11 learn of it between plea and sentencing in order to make such a motion. I find no reported decision from this Court using the rule in this way. In any event, the traditional liberality was largely eliminated in *State v. Fisk*, 165 Vt. 260, 263, 682 A.2d 937, 939 (1996). See *id.* at 266, 682 A.2d at 940 (Dooley, J., dissenting). Under *Fisk*, defendant would have to show he had a subjective misunderstanding with respect to the Rule 11 information and present evidence to demonstrate that subjective misunderstanding was reasonable under the circumstances. *Id.* at 263, 682 A.2d at 939. I find defendant's burden under *Fisk* indistinguishable from that in a post-conviction-relief proceeding. See *id.* at 266, 682 A.2d at 940 (import of decision is that there "is a strong presumption against allowing withdrawal" of a plea). I don't agree with the majority's response that the standards are different because in a PCR proceeding defendant would have to show prejudice. More important to this case, and as discussed below, the majority's comparison in a Rule 11(f) case is clearly erroneous because we specifically held in *In re Dunham*, 144 Vt. 444, 451, 479 A.2d 144, 148 (1984), that, "[u]nlike collateral review of alleged defects under V.R.Cr.P. 11(c), which places a burden of proving prejudice upon the defendant, collateral attacks for defects under Rule 11(f) require no showing of prejudice." In short, there is no prejudice requirement for PCR review in this case.

¶ 45. It is the sentencing that is likely to bring out any misunderstanding of the consequences of the plea of guilty. Yet, if the sentence involves incarceration, defendant no longer has any ability to correct a Rule 11 error in the district court once the sentence is imposed. See V.R.Cr.P. 32(d). Even where the district court retains jurisdiction because defendant is not in custody under sentence, the burden that must be overcome is no easier than that necessary to successfully obtain plain-error review. See *id.* (plea may be withdrawn after sentence "only to correct manifest injustice"); *State v. Yates*, 169 Vt. 20, 27-28, 726 A.2d 483, 488 (1999). Thus, as explained by the majority in this case, the real remaining remedy is a post-conviction-relief proceeding in superior court.

¶ 46. My point is that whatever the theoretical possibilities, there is actually no such thing as direct review of a Rule 11 error under the majority's holding. There can only be plain error review or a collateral attack in a post-conviction-relief proceeding. Although on the surface *Thompson* simply treated Rule 11 errors the same as all other errors in requiring preservation for review, in reality it carved out a special and unique class of errors — that is, failures to comply with Rule 11 — that are virtually unreviewable. It would help this debate if the majority would acknowledge that it is not about preservation, but is really about the standard of review for Rule 11 errors. The suggestion that defendant is somehow to blame for failure to object to the Rule 11 error only makes the majority's policy much harder to swallow.

¶ 47. Is there some reason to make Rule 11 errors virtually unreviewable? To the extent this Court has articulated a rationale in the past, I suppose it is that the trial judge should always have the opportunity to correct errors and we do not want to reverse convictions solely for technical errors. I think the latter concern can be addressed by a common sense application of the rule, and the former argument is inadequate where, as here, preservation will never occur.

¶ 48. The majority has stated part of the rationale for the United States Supreme Court decision in *United States v. Vonn*, 535 U.S. 55, 72 (2002), and I have responded to that rationale above. The Court went further:

> But the incentive to think and act early when Rule 11 is at stake would prove less substantial if Vonn's position were law; a defendant could choose to say nothing about a judge's plain lapse under Rule 11 until the moment of taking a direct appeal, at which time the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place on the Government's shoulders. This result might, perhaps, be sufferable if there were merit in Vonn's objection that applying the plain-error standard to a defendant who stays mum on Rule 11 error invites the judge to relax. The plain-error rule, he says, would discount the judge's duty to advise the defendant by obliging the defendant to advise the judge. But, rhetoric aside, that is always the point of the plain-error rule: the value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just

> sits there when a mistake can be fixed cannot just sit there when he speaks up later on.

*Id.* at 73. I find this rationale unpersuasive. It presupposes a defendant with a preexisting knowledge of the details of Rule 11 and counsel who will obtain exacting compliance with Rule 11 even if it undermines a negotiated plea. It fails to recognize that a sentence after an appeal is unlikely to be more favorable to a defendant. It also fails to recognize that it is the sentence that shows the consequences of the plea that the Rule 11 colloquy may have omitted. The plain-error standard does, indeed, "discount the judge's duty to advise the defendant by obliging the defendant to advise the judge." *Id.* It may in theory require "defense counsel to be on his toes," but in practice offers no incentive to defense counsel to do so and simply curtails direct review in all cases. Finally, the balancing of protection of the defendant's rights against judgment finality may require very limited review in case of collateral attack; it should not reach the same conclusion on direct review.

¶ 49. Although I am struck by the weakness of the rationales for curtailing Rule 11 direct review, the real reason for my disagreement is the overwhelming evidence that limitations on review have eviscerated Rule 11 compliance. Virtually all of our Rule 11 decisions involve one form or another of collateral attack. Most of these decisions involve the colloquy requirement of Rule 11(c), the requirement that the court address the defendant "personally in open court" and inform the defendant and determine that the defendant understands the nature of the charge, the maximum and minimum penalty, the right to plead not guilty, the consequences of the guilty plea, the consequences of the court's refusal to accept a plea agreement, and the consequences if the court questions the defendant under oath. V.R.Cr.P. 11(c)(1)–(6). In the course of those decisions, we have allowed virtually every possible violation of Rule 11(c), short of total noncompliance. See *State v. Riefenstahl,* 172 Vt. 597, 599, 779 A.2d 675, 678 (2001) (mem.); *State v. Morrissette,* 170 Vt. 569, 571, 743 A.2d 1091, 1093 (1999) (mem.); *In re Thompson,* 166 Vt. 471, 475, 697 A.2d 1111, 1113 (1997); *State v. Pilette,* 160 Vt. 509, 511-12, 630 A.2d 1296, 1297-98 (1993); *In re Moulton,* 158 Vt. 580, 583-84, 613 A.2d 705, 707-08 (1992); *State v. Whitney,* 156 Vt. 301, 302-03, 591 A.2d 388, 389-90 (1991); *In re Fadden,* 148 Vt. 116, 121-22, 530 A.2d 560, 563-64 (1987); *In re Kivela,* 145 Vt. 454, 457-58, 494 A.2d 126, 128-29 (1985); *In re Bentley,* 144 Vt. 404, 409-11, 477 A.2d 980, 982-83 (1984); *In re Hall,* 143 Vt. 590, 594-96, 469 A.2d 756, 758-59 (1983); *In re Lovejoy,* 131 Vt. 525, 527-28, 309 A.2d 926, 927 (1973); see also *State v. Ploof,* 162 Vt. 560, 562-63, 649 A.2d 774, 776-77 (1994) (direct appeal, plain error required); *State v. Thompson,* 162 Vt. at

533-34, 650 A.2d at 141 (direct appeal, plain error required); *State v. Gabert*, 152 Vt. 83, 88-89, 564 A.2d 1356, 1359-60 (1989) (direct appeal). The only decision of this Court reversing a criminal conviction for failure to comply with Rule 11(c) noted that the defendant had serious mental limitations and the colloquy "hardly touched on the requirements of Rule 11(c)." *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998) (direct appeal; plain error found). We also reversed a delinquency adjudication in *In re J.M.*, 172 Vt. 61, 63, 769 A.2d 656, 658 (2001), but only on a finding that the court "failed to conduct any V.R.Cr.P. 11 colloquy whatsoever."

¶ 50. We have had a particularly large number of Rule 11 appeals in recent months in cases where predicate DUI convictions based on guilty pleas are being used to enhance the DUI charge in the case before us, usually into felony status. Prior to our holding in *State v. Boskind*, 174 Vt. 184, 192, 807 A.2d 358, 366 (2002), that a repeat-offense DUI defendant cannot challenge predicate convictions that lead to an enhanced penalty because of noncompliance with Rule 11 requirements, many district courts were allowing such challenges. We have had such a glut of these cases that most are being resolved on the express track without a published opinion. These records demonstrate that it is almost always possible for a defendant to argue that a predicate conviction should not be used to enhance because of a substantial noncompliance with Rule 11(c). These records strongly suggest that the requirements of Rule 11(c) are too often honored in the breach.

¶ 51. Over 95% of our criminal cases are resolved on pleas of guilty or nolo contendere. This means that in busy trial courts guilty plea proceedings occur thousands and thousands of times each year. The quality of our criminal justice is actually determined by how we conduct those plea proceedings and not by how we conduct the relatively few criminal trials. At least as judged by the ideal created by Rule 11, we often do not measure up.

¶ 52. I recognize that the problem may be that the requirements of Rule 11 may be too rigid, causing an unnecessary time consumption incompatible with the mass processing of the volumes of cases in our courts. We should face up to that reality by examining the rule critically and making the needed adjustments to adapt it to current realities without sacrificing the essential protections against unconstitutional convictions. We now have the worst of the available options — legal requirements that are ignored by the same institutions that created them, demonstrating official disrespect for the law. As long as we have it in our

power to reshape Rule 11 if it is incompatible with its function and fail to do so, we should enforce it.

¶ 53.   I am not arguing that we should change the standards of review on collateral attack of a conviction based on a guilty or nolo plea, and, therefore, my position would not affect the outcome in the vast majority of Rule 11 cases we have decided. Indeed, our collateral attack decisions frequently note that the standard to obtain relief is higher in the case of collateral attack. See *In re Thompson*, 166 Vt. at 475, 697 A.2d at 1113. I believe, however, that the current deficiency in Rule 11 compliance exists because there is no way to get review, even directly, to avoid the very limited standard of review that affirms the conviction despite virtually any Rule 11 error. Deviations from Rule 11 requirements for which there never can be conviction reversals simply let the deviations become the normal level of compliance.

¶ 54.   Nor am I arguing that all violations of Rule 11, however technical, should cause reversals of criminal proceedings. Under V.R.Cr.P. 52(a), an error that "does not affect substantial rights shall be disregarded." We have used this standard on countless occasions to separate errors that matter from those that do not. The wording is based on the federal rule, and has been used many times by the federal courts. See 3A C. Wright, Federal Practice and Procedure §§ 852-854 (1982). Although I recognize that I would not adopt the standard of review the majority favors, I cannot agree that it is unclear what standard I favor for direct review of a Rule 11 violation.

¶ 55.   Again, I find the majority's approach is to ignore the problem. I am not purporting to base my conclusions about Rule 11 compliance on a scientific study. Nor is it surprising that the numbers of appeals from guilty plea convictions are low because in most cases, irrespective of Rule 11 compliance, the result is fair and defendant is unlikely to improve upon it with resentencing. I am, however, seeing the same records on appeal as the rest of the Justices, and those records show that we have a substantial noncompliance problem. If we do not require or expect compliance with Rule 11, why is it surprising that compliance does not occur?

¶ 56.   While I believe it inappropriate to require a finding of plain error to respond to a Rule 11 error on direct appeal in any case, there is a special reason why it is inappropriate in this case. Defendant alleges a violation of Rule 11(f), not Rule 11(c), because the court failed to make a sufficient inquiry to determine that there was a factual basis for defendant's plea. In *In re Dunham*, 144 Vt. at 451, 479 A.2d at 148, a post-conviction-relief proceeding in which petitioner attacked a guilty plea because of noncompliance with Rule 11(f), this Court held: "Unlike

collateral review of alleged defects under V.R.Cr.P. 11(c), which places a burden of proving prejudice upon the defendant, collateral attacks for defects under Rule 11(f) require no showing of prejudice." By this decision, the majority has made defendant's burden on direct appeal more onerous than that applicable to a collateral attack, exactly the opposite of how review should be structured. Moreover, we justified our decision in *Thompson* on the need for "a factual record" that could be obtained in a post-conviction-relief proceeding, 162 Vt. at 534, 650 A.2d at 140, but under *Dunham* no factual record is necessary to evaluate a Rule 11(f) error in such a proceeding.

¶ 57. Although my primary dissent is to the limited standard of review in the majority's holding, I also believe that it's conclusion, even under its limited standard of review, is wrong. There was no compliance with Rule 11(f) in this case. Indeed, the majority's rationale for finding no error is a vivid demonstration why our law in this area is in need of modification.

¶ 58. After a colloquy directed at whether defendant understood the information set out in Rule 11(c), the prosecution requested that the court determine the factual basis for the plea. The court first asked defense counsel whether defendant conceded that there was a factual basis for the plea and *defense counsel* answered "yes." The court then addressed defendant and asked whether the affidavit had been read to him and defendant answered "yes." The court then asked whether defendant agreed that the facts in the affidavit were "what happened." Before defendant could answer, the prosecutor intervened to explain an error in the affidavit and explained that defendant might not agree with the affidavit because of the error. The court then said "Is there any dispute about that?" and *defense counsel* answered "no." Defendant never spoke again and never answered the question whether he agreed with the affidavit and was never asked whether he agreed with the prosecutor's version of the facts. Even defense counsel's statement is open to multiple interpretations; specifically, he agreed only that the affidavit was in error. The court found that defendant "knows what he is doing, that he is well advised, and he understands the consequences of his plea and the terms of his plea agreement," but never found a factual basis for the plea.

¶ 59. We explored in detail the requirements of Rule 11(f) in *State v. Yates*, 169 Vt. at 24-25, 726 A.2d at 486, a direct appeal case. We reasoned:

> While the court may obtain facts from other sources, including the prosecutor and the presentence report, . . ., ultimately, the court's inquiry into the accuracy of the plea must be addressed personally to the defendant. This is because the factual basis for the plea may consist only of facts that defendant has admitted

during the proceedings at which the plea is entered. While few Vermont cases have turned on an interpretation of Rule 11(f), those that have consistently require that the defendant admit to and possess an understanding of the facts as they relate to the law for all elements of the charge or charges to which the defendant has pleaded.

*Id.* at 24, 726 A.2d at 486. We held in terms directly applicable to this case:

We therefore [hold] . . . that an affidavit may be a source of facts to support the plea, but that the defendant must subsequently admit to these facts in the plea colloquy to demonstrate that there is a sufficient factual basis.

*Id.* at 27, 726 A.2d at 488.

¶ 60.   Here the court failed to obtain an admission of facts from defendant showing that each element of the offense was met. The court obtained a conclusory statement from defense counsel and an explanation from the prosecutor, but never obtained any admission from defendant. The majority's attempt to slide over the error with its statement that "the factual basis was in effect stipulated to and admitted by defendant" is clearly inconsistent with the record.

¶ 61.   The majority grounds its decision on *State v. Morrissette*, 170 Vt. at 571, 743 A.2d at 1092-93, a memorandum decision involving a collateral attack. Essentially, the majority holds that irrespective of the reasoning of *Yates*, it is sufficient if defendant's lawyer, not defendant, agrees that there is a factual basis for the plea. If *Morrissette* held as the majority credits it, this memorandum decision sub silentio overruled the one-year-old decision in *Yates*, 169 Vt. at 24, 726 A.2d at 486, that only a personal colloquy with *defendant* to establish the factual basis complies with Rule 11(f). We should be very cautious in giving this kind of effect to a memorandum decision, particularly where the decision claims it is consistent with *Yates*.

¶ 62.   A fair reading of *Morrissette* must distinguish it rather than putting it in conflict with its most recent precedent. *Morrissette* was a collateral attack, not a direct appeal, and there is no indication in the decision that defendant claimed a violation of Rule 11(f), as opposed to Rule 11(c) and (d). Indeed, it is not clear that this Court believed in *Morrissette* that the facts are similar to those here since it states in that decision that defendant made a stipulation to the "factual basis for the charge." *Id.* at 570, 743 A.2d at 1092.

¶ 63.   The majority response is to restate the holding of *Yates* and ignore its rationale. *Yates* specifically requires that compliance with Rule

11(f) come from personal address of the defendant, 169 Vt. at 25, 726 A.2d at 487, and added that "[t]his necessarily requires a conversation with defendant regarding whether or not the defendant admits to the alleged conduct." *Id.* at 26, 726 A.2d at 487. It went on to say that defendant's understanding "cannot be probed except through personal interrogation." *Id.* at 27, 726 A.2d at 487. Despite this language, the majority now holds that where there is a colloquy with defendant's lawyer and the lawyer states that there is a factual basis for the plea, "defendant stipulated to the facts."

¶ 64. There are two ways to read the majority's rationale in this case, either of which is inconsistent with *Yates*. The first is that the lawyer is the agent of the client for purpose of the Rule 11(f) colloquy, and the court may conduct it solely with the lawyer. This reading is plainly inconsistent with the requirement of personal address or interrogation in *Yates*.

¶ 65. The second is that the client who hears the colloquy between the judge and the lawyer is presumed to have endorsed it. For this theory to be correct, however, the content of the colloquy must comply with Rule 11(f). Here, the lawyer stipulated that there was a factual basis for the plea, a statement of pure legal jargon that does not convey to defendant what facts the lawyer has stipulated to. Stipulation to a legal conclusion, and not to facts, does not comply with *Yates*. See *id.* at 26, 726 A.2d at 487.

¶ 66. I return to my point that the majority's rationale itself demonstrates the deficiency in our approach. We have over many decisions allowed such violations of Rule 11 that the few decisions that insist on Rule 11 compliance appear almost to be random, unpredictable acts. Our approach to Rule 11 requires rethinking, not the invention of more ways to excuse noncompliance.

¶ 67. In describing the effect of the 1983 addition to F.R.Cr.P. 11 of section (h), explicitly applying harmless error standards to Rule 11 violations, Professor Charles Alan Wright in his leading treatise opines that the addition did not turn "Rule 11 into a paper tiger." 1A C. Wright, Federal Practice and Procedure § 178, at 312 (1999). I wish I could say the same about the effect of our decisions, including this one, on Rule 11 in Vermont. If we are willing to enforce Rule 11 only as a paper tiger, it is preferable for our jurisprudence to repeal the rule.

¶ 68. I would hold that the standard of review for a direct appeal of a Rule 11 violation is governed by *State v. West* and explicitly overrule the prior holding to the contrary in *State v. Thompson*. Thus, I would hold that defendant need not show plain error here and that he showed error such that the criminal conviction must be reversed. Moreover, even if defendant is required to show plain error, he did so under the standards of

*State v. Yates.* Accordingly, I dissent from the majority's decision to affirm defendant's conviction.

¶ 69.  **Johnson, J.,** dissenting. Nine years ago, in another appeal before this Court, I stated my belief that the same mentally retarded defendant was incompetent to waive his constitutional rights. See *State v. Cleary,* 161 Vt. 403, 414-15, 641 A.2d 102, 109 (1994) (Johnson, J., dissenting). For reasons similar to those stated in my earlier opinion, I do not believe that defendant was competent to waive his rights and plead guilty to the charged offenses in this case. Nothing in the record suggests otherwise. Indeed, the competency court's own findings indicate that defendant still suffers from the same life-long mental deficiencies as in the past. But, even assuming that the court was correct in determining that defendant was marginally competent to enter a guilty plea, the colloquy at the plea hearing was woefully inadequate for the trial court to assure itself that defendant had entered a knowing and intelligent guilty plea. Accordingly, I respectfully dissent.

¶ 70.  Defendant is a mentally retarded man with an IQ (intelligence quotient) of sixty-five, placing him in the bottom two percent of the population. Although his functional abilities have improved in some areas, his mental deficiencies have remained constant over the years. According to the experts, his mental capacity is approximately that of a ten-year-old, and he has the emotional level of even a younger child. His greatest deficiencies are in language and abstract thinking. Like many persons with mental retardation, defendant has the tendency to mask his handicap by indicating that he understands more than he actually does and by telling others, particularly authority figures, what he believes they want to hear. See *State v. Lockwood,* 160 Vt. 547, 569, 632 A.2d 665, 668 (1993) (Johnson, J., dissenting) (to overcome their limited communication skills, mentally retarded persons may answer "yes" when they think questioner is looking for "yes"). In finding defendant to be marginally competent in this case, Judge Davenport acknowledged that defendant is significantly impaired in language-based areas of understanding, that his greatest deficiencies are in abstract thinking, that he had no understanding of how a jury trial functioned, and that although the experts were divided on whether defendant was incompetent, they agreed that the competency question was a "close call."

¶ 71.  It is generally recognized that at least a basic level of abstract thinking is necessary to knowingly and intelligently enter a guilty plea. A defendant considering a guilty plea must weigh the potential benefits and risks of going to trial, testifying, confronting his accuser, and raising certain defenses. See *Godinez v. Moran,* 509 U.S. 389, 398 (1993).

Although there is no heightened standard of *competency* to plead guilty rather than stand trial, there is a heightened standard for pleading guilty in the sense that the trial court must satisfy itself that the waiver of constitutional rights is knowing and voluntary. *Id.* at 400-01.

¶ 72. When, as in this case, the person pleading guilty is mentally retarded and only marginally competent, there must be a heightened *scrutiny* of the plea to assure that it has been knowingly and intelligently entered. In such situations, a routine presentation of yes/no questions is unlikely to achieve that purpose. See *United States v. Masthers*, 539 F.2d 721, 728-29 (D.C. Cir. 1976) ("standard Rule 11 colloquy may prove an inadequate measure of the validity of a plea proffered by a defendant of questionable mental competence"); *Osborne v. Thompson*, 481 F. Supp. 162, 169 (M.D. Tenn. 1979) (routine questioning in Rule 11 colloquy "is particularly questionable when the defendant is of limited intelligence," and thus if "court is on notice that the defendant's mental faculties may be impaired, the court has a responsibility to delve further to determine the defendant's comprehension"); cf. *State v. Pollard*, 163 Vt. 199, 207, 657 A.2d 185, 190 (1995) (given defendant's acknowledged mental problems, trial court should have engaged defendant in full-scale inquiry concerning his experience, motives, and understanding of his undertaking in waiving counsel). Indeed, as we have noted, the normally difficult task of accurately assessing a defendant's capacity to understand his rights when charged with a crime becomes daunting "when the circumstances include a diagnosis of mental retardation." *In re J.M.*, 172 Vt. 61, 68, 769 A.2d 656, 662 (2001).

¶ 73. The situation in this case is remarkably similar to the circumstances in *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998), where we determined that the trial court's acceptance of a mentally limited defendant's no-contest plea following a brief Rule 11 colloquy was plain error. In that case, the court found the defendant, who had an IQ below seventy, to be competent after hearing the examining psychiatrist testify that he was "marginally competent." At a later status conference, in response to questioning by defense counsel, the defendant revealed his lack of understanding as to the role of the jury and how a jury trial functioned. We concluded as follows:

> [G]iven defense counsel's continuing difficulty in communicating with his client, and the close question over whether defendant was competent to stand trial, it was imperative for the court at the status conference to assure that defendant fully understood the rights he would be waiving by entering his plea. Instead, the

court accepted defendant's no-contest plea after only a brief colloquy that hardly touched on the requirements of Rule 11(c).

. . . Considering that the court was fully aware of defendant's mental limitations, its failure to engage defendant in the required Rule 11 colloquy undermines confidence in the outcome of the proceedings and thus was plain error.

*Id.* The same is true here. I agree with Justice Dooley both that a defendant need not demonstrate plain error in challenging on direct review the sufficiency of a Rule 11 colloquy, but that there was plain error in this instance, given defendant's marginal competency and the lack of any in-depth inquiry into his understanding of the underlying facts or the nature and consequences of his plea.

¶ 74. After reading the information in this case, the trial court suggested that, because of defendant's limitations, defense counsel should do the questioning at the plea hearing. The following colloquy, in its entirety, took place:

DEFENSE COUNSEL: Donald, I'm going to ask you a few questions. Alright. Do you understand what the charges are . . . pending against you?

DEFENDANT: Yes.

DEFENSE COUNSEL: Okay. And have you had an opportunity to review the affidavit of [the police detective] that's attached to those two charges?

DEFENDANT: Yes.

DEFENSE COUNSEL: Now, did Tod Hill read that affidavit to you?

DEFENDANT: Yes.

DEFENSE COUNSEL: That was on Friday?

DEFENDANT: Yes.

DEFENSE COUNSEL: And do you understand what's in the affidavit of [the police detective]?

DEFENDANT: Yes.

DEFENSE COUNSEL: Do you understand, Donald, that by entering guilty pleas today, there won't be any other proceedings other than the sentencing for you? Do you understand that?

DEFENDANT: I have had people tell me it's better to do this. So I'll do this.

DEFENSE COUNSEL: Do you understand that you have the right to have a trial in front of 12 people?

DEFENDANT: Yes.

DEFENSE COUNSEL: Do you understand that you have the right to testify at that trial?

DEFENDANT: Yes.

DEFENSE COUNSEL: And do you understand that you have the right for me to ask questions of PC, your mother, and other witnesses that the State would present?

DEFENDANT: Yes.

DEFENSE COUNSEL: Do you understand that by entering these guilty pleas this morning, you are going to give up the right to have that trial?

DEFENDANT: Yes.

DEFENSE COUNSEL: Do you have any questions at this time?

DEFENDANT: Not that I can think of.

DEFENSE COUNSEL: Do you feel as though — well, do you feel well enough to go ahead this morning?

DEFENDANT: I'm just doing what people tell me to.

DEFENSE COUNSEL: Well, we need to know if this is what you want to do.

DEFENDANT: I want to get it over with.

DEFENSE COUNSEL: Well, do you want to get it over with? Do you want to give up your right to your trial?

DEFENDANT: Yes.

DEFENSE COUNSEL: Do you understand what's involved with the plea agreement? Have you had — You and I have gone over this plea agreement?

DEFENDANT: Yes.

DEFENSE COUNSEL: And do you feel as though you understand what the terms of the plea agreement are?

DEFENDANT: From what you told me I do.

DEFENSE COUNSEL: Do you understand that at your sentencing the Judge could sentence you up to ten years to serve and 20 years for a maximum?

DEFENDANT: Yes.

DEFENSE COUNSEL: Can you do me a favor, Donald, and at this time can you tell me what that ten years mean?

DEFENDANT: Minimum. Minimum and maximum. Minimum. And 20 is the maximum.

DEFENSE COUNSEL: Do you understand what this provision that we reserve the right to argue for less at sentencing?

DEFENDANT: What was the question?

DEFENSE COUNSEL: Do you understand what this — do you understand what it means for me to argue for less at sentencing?

DEFENDANT: Yeah. You said you could try to get it lower.

DEFENSE COUNSEL: That's right. Is anybody forcing you to enter into this plea agreement, Donald?

DEFENDANT: No.

DEFENSE COUNSEL: Are you doing this voluntarily?

DEFENDANT: Yes.

DEFENSE COUNSEL: Anybody made any other promises to you?

DEFENDANT: No.

THE COURT: Mr. Cleary, do you have any questions you'd like to ask me about this?

DEFENDANT: I need some kind of help, and jail won't help me.

THE COURT: Okay.

DEFENDANT: That's all I can say.

THE COURT: We can discuss this at the sentencing hearing that's coming up. Are you satisfied with the help that [defense counsel] has given you?

DEFENDANT: Yes.

. . . .

THE COURT: Okay, I take it . . . that your client is conceding that there is a factual basis for the charges, at least as amended?

DEFENSE COUNSEL: Yes, your Honor. We would be.

THE COURT: Mr. Cleary, you read over the affidavits or the affidavits were read over to you?

DEFENDANT: Yes.

¶ 75. This colloquy reveals that, despite his marginal competence, defendant was asked almost exclusively yes/no questions that failed to probe the level of his understanding of his guilty plea. The only area in which defense counsel elicited any evidence of defendant's understanding was the length of the recommended sentence. Almost all of defendant's responses were a simple "yes," and the ones that were not suggested that defendant was pleading guilty simply because others had told him that he should do so. The judge at the competency hearing found that defendant had no understanding of the role of a jury, and yet none of the questions in the colloquy were aimed at assuring the court that defendant in fact understood how a jury trial would function, and thus what rights he was waiving.

¶ 76. Nor did the trial court address defendant personally to determine that he understood the factual basis for the charged offenses, including the elements of the offenses that the State would have to prove to convict him at trial. See *State v. Yates*, 169 Vt. 20, 24, 726 A.2d 483, 487 (1999) (V.R.Cr.P. 11(f) requires trial court to personally address defendant to assure that he is admitting to and understands "the facts as they relate to the law for all elements of the charge or charges to which the defendant has pleaded"); cf. *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1093 (1999) (mem.) (given straightforward nature of DWI charge and lack of any evidence that defendant was incompetent, there was substantial compliance with Rule 11 based on defendant's acknowledgment that he had read and understood documents that included his stipulation to factual basis for charged offense). It was particularly crucial for the court to do so in this case because the record indicated that defendant had suggested to police that he and his mother had had consensual sexual encounters in the past, and that she had consented to his conduct that led to the charged offenses.

¶ 77. Defendant is a mentally retarded man accused of raping his mother. Notwithstanding the unanimous recognition by all concerned of his significant deficiencies in communicating and understanding abstract concepts, the trial court proceeded with a Rule 11 colloquy that was routine in every respect, except that defense counsel, rather than the court, asked the questions. Most likely, the trial court was wary, given

defendant's pronounced mental limitations, that its own inquiry might stray from any rehearsed colloquy between defendant and his attorney. In any event, the court's disinclination to engage defendant in a conversation underscores defendant's perceived incompetence and makes a mockery of Rule 11's requirement of a personal colloquy between the court and the defendant. I believe that there was a total failure in this case to comply with both 11(f) and 11(c). Because the responses elicited from defendant during the colloquy gave no indication that he understood the rights he was waiving, I would reverse the conviction and, at minimum, remand the matter for another plea hearing.