**Vincent RIZZO, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 889, Docket 74–2523.**

United States Court of Appeals, Second Circuit.

Argued April 10, 1975.

Decided May 19, 1975.

---

Vincent Rizzo, pro se.

Michael D. Abzug, U. S. Dept. of Justice (Paul J. Curran, U. S. Atty., S. D. N. Y., on the brief, Lawrence S. Feld, Asst. U. S. Atty., of counsel), for respondent-appellee.

Before HAYS, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York denying by endorsement and without a hearing appellant's motion, made pursuant to 28 U.S.C. § 2255, to vacate his judgment of conviction and sentence. Appellant claims that his guilty plea was not made voluntarily with an understanding of the nature of the charges and the consequences of the plea, and that there was no factual basis for the plea. We agree that the requirements of Rule 11 of the Federal Rules of Criminal Procedure were not met here.[1] Accordingly, we reverse the judgment of conviction and remand so that appellant may plead anew.

Appellant, Vincent Rizzo, was indicted along with two co-defendants, Phillip Crispino and Patty Marino, on December 6, 1972. Count One of the indictment charged Rizzo and his co-defendants with conspiracy to participate in the use of extortionate means to collect and attempt to collect extensions of credit from John Calamaras and conspiracy to obstruct, delay and affect the movement of articles and commodities in commerce

---

1. F.R.Cr.P. 11 provides:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

by obtaining property from Calamaras by the wrongful use of actual and threatened use of force, violence and fear in violation of 18 U.S.C. §§ 894 and 1951. Count Two charged the defendants with participating in the use of extortionate means to collect and attempt to collect extensions of credit from John Calamaras in violation of 18 U.S.C. §§ 891(2) and (7) and 894. Count Three, the plea to which is in issue here, charged the defendants with obstructing, delaying and affecting commerce and the movement of articles in commerce by obtaining money from Calamaras through the inducement of actual and threatened use of force, violence and fear in violation of 18 U.S.C. § 1951.

On October 9, 1973, Rizzo withdrew his previously entered plea of not guilty and entered a plea of guilty to Count Three of the indictment.[2] At the plea proceedings, the District Court, after determining that Rizzo was ready to plead, asked the appellant if he wished to have the third count of the indictment read to him. Appellant's attorney stated that he would waive a reading of the indictment since he had read the third count a number of times and had discussed the indictment and the facts of the case with appellant. Judge Duffy then specifically asked the appellant if he wished the third count read to him. The appellant responded, "It does not have to be read to me. I don't contest the indictment at all."

The District Court then explored the voluntariness of Rizzo's plea and his understanding of the charge against him. In so doing, Judge Duffy, paraphrased the indictment and outlined the consequences of a guilty plea.[3]

Judge Duffy then asked Rizzo if he had committed the offense charged in the indictment. The ensuing exchange

---

**2.** On September 12, 1973 Phillip Crispino waived indictment and pleaded guilty to a one count information which charged him with conspiring with Marino and Rizzo, named as co-conspirators but not as defendants, to violate 18 U.S.C. §§ 894 and 1951. On November 5, 1973, Crispino received a suspended sentence and was placed on probation for three years.

Patty Marino has never been apprehended.

**3.** The relevant portion of the transcript reads as follows:

"The Court: Do you know that if you pleaded not guilty you would be entitled to a speedy and public trial by a judge or a judge and jury? Do you understand that, if you pleaded not guilty?

Defendant Rizzo: I would be entitled to a trial, yes, your Honor.

The Court: Do you know that at such trial the government would have to produce its witnesses against you and that you would be entitled through your counsel to cross-examine them?

Defendant Rizzo: Yes, your Honor.

The Court: Do you know that you would have the right to call your own witnesses in your defense?

Defendant Rizzo: I know that, your Honor.

The Court: And that, if necessary, I could issue a process for a summons or a device to get those witnesses to come here. Do you understand that, sir?

Defendant Rizzo: Yes, your Honor.

The Court: Count 3 of the indictment basically charges that you, Phillip Cr[i]spino and Patty Marino did obstruct the movement of articles and commodities in commerce and attempt to do so by extortion, that is, by obtaining money from John Calamaras with his consent but induced by wrongful use of actual or threatened use and force.

Do you understand what the nature of the charge you are pleading to is, sir?

Defendant Rizzo: I understand my role in that, your Honor.

The Court: Mr. Padget, what is the range of penalties which is available here?

Mr. Padget: A maximum of 20 years and I believe a maximum of $10,000, your Honor.

The Court: Have any threats or promises been made to you to induce you to plead guilty?

Defendant Rizzo: No, your Honor.

The Court: I am about to make you aware of one thing at this point: If I accept the plea of guilty in this case, I understand you have also pleaded guilty before Judge Bryan?

Defendant Rizzo: Yes, your Honor.

The Court: I intend to refer this matter to Judge Bryan for sentence. I will not keep it for sentence. Do you understand that, sir?

Defendant Rizzo: Yes, your Honor.

The Court: Now, other than that, is there any understanding or prediction that has been made to you concerning what sentence you might receive?

Defendant Rizzo: No, your Honor." (Tr. 3–4).

is reprinted in the margin.[4] Essentially, Rizzo asserted that Calamaras was his "dear friend", that their friendship was of many years duration, that he, Rizzo, had personally loaned Calamaras money and has also borrowed money on Calamaras' behalf, and that he had authorized Crispino and Marino to collect the debt from Calamaras. He denied any knowledge or condonation of the use of

4. "Defendant Rizzo: The fact is I know what I did and I was aware of it and that's it. I could only tell your Honor exactly what I did, the way I conducted myself, what my intentions were and that's it.

The Court: Tell me what you did.

Defendant Rizzo: Mr. Calamaras, who was my dear friend, I went out of my way to give him as much money and borrow for him as much money as physically possible.

My role in it was the role of getting monies for Mr. Calamaras. Besides my own money, I got him other monies. Interest was paid on monies. The rate of interest, I don't know the law as far as the shylocking is concerned, but interest was paid on this money. It was above the interest of a bank of 8 percent a year or whatever the bank rate is.

The Court: How much was it, do you know?

Defendant Rizzo: Yes, sir. There was one loan that amounted to $10,000 that Mr. Calamaras paid $130 a week. He paid it at $20 a day for five days a week and then on Saturday he would pay $30 and that amounted to $130 to be paid back at 100 weeks, which is $13,000, which would be $3,000 interest.

Then there was other monies, that I gave him personally. I believe it amounted to approximately $1500 and he insisted on paying me the rate that he would have had to pay if I would have got the money off of somebody else, which I believe was $35 a week interest. That loan persisted or continued approximately less than two months. At that time it was a constant thing, going there every day, trying to get some money, but this relationship between me and Mr. Calamaras has been in existence since the Blue Sea restaurant has been opened on Third Avenue and prior to that when he owned a restaurant on Avenue B between 12th and 11th street.

My personal relationship with him was beyond the point of a casual friend.

The Court: The Blue Sea restaurant has been open for about how many years?

Defendant Rizzo: Approximately 1964, your Honor. '64–'65. It was a small more or less a coffee shop before the actual restaurant was opened near or adjacent to the same premises. As far as me extending myself to him, I felt obligated to him because he extended himself to me. How he extended himself to me was by paying with me a car for over a year, giving me as much money as I needed at certain times, a few years back, and I have never—I have always offered to bring my family in there, go in there and eat as the place was as good as mine. He said I could do whatever I want.

Besides being a regular friend, the man was more or less like my father so that was our relationship and we belonged to the same fraternity and I had a certain obligation to our beliefs and that's it.

Now, as far as Mr. Cr[i]spino is concerned, he has never given that man any money. I wouldn't allow it. He collected money on my request and so did Patty Marino.

How they collected the money, I was unaware of it. I was unaware Mr. Cr[i]spino ever threatening this man because I would never allow it and I was also unaware of Mr. Marino threatening this man.

As far as Mr. Marino and Mr. Calamaras, as far as I know it to be, he stressed to him the extreme pressure I was under, being I borrowed this money and I had to pay it back, and things just piled up as far as monies. The day came where I gave out—I borrowed more than I could possibly pay back and I had—being he was so close to me, I had to discuss this with him every day that he was well. When Mr. Calamaras became sick, I told him that's it. I says, 'You're unable,' and his son took up the obligation, whatever the obligation was, that's about it. The last time I saw Mr. Calamaras was in St. Vincent's Hospital approximately two weeks before he passed away and I discussed this with him.

I says, 'I have an indictment that claims that I forced you.'

He says, 'My son, don't worry about it.'

And I says, 'Well, I asked my lawyer at the time if it would be proper to get a note or something or some kind of a document.'

And he says, 'It isn't necessary. If Mr. Calamaras lives he comes to court. If he doesn't live, you have no case.'

So, I relayed that back to him and he again told me 'Don't worry about it' and that's it.

As far as me saying anything that would be not the truth, even if the man is dead, I haven't got that right.

The Court: But you did send Mr. Cr[i]spino and Mr. Marino to collect for you?

Defendant Rizzo: Yes, your Honor.

The Court: Do you still wish to plead guilty to count 3 of this indictment?

Defendant Rizzo: Yes, your Honor." (Tr. 5–8).

force in making the collections, but indicated that he still wished to plead guilty to the charge.

Rizzo's attorney then stated that his discussions with the prosecutor and his review of government tape recordings had satisfied him that there was no reason for the Court not to accept Rizzo's plea of guilty. Judge Duffy concluded the allocation by stating that he believed that Rizzo was "acting voluntarily and knowledgeably and that there was a basis in fact for the guilty plea."

On December 6, 1973, Rizzo was sentenced by Judge Frederick vanPelt Bryan[5] to a twenty-year prison term on Count Three to run concurrently with previous sentences imposed by Judge Gagliardi and Judge Carter. Counts One and Two of the indictment were dismissed on appellant's motion at the time of sentence.

On October 17, 1974, Rizzo moved, pursuant to 28 U.S.C. § 2255, to vacate his sentence and set aside the judgment of conviction. In an order filed on October 22, 1974, Judge Duffy denied the motion without a hearing.

■ The Supreme Court, in the exercise of its supervisory power over the lower federal courts, has held that a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure specified in Rule 11. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). That procedure is designed to facilitate the district judge's determination of the voluntariness of a guilty plea and also to produce a complete record at the time the plea is entered of the factors relevant to the voluntariness determination. Id. at 465, 89 S.Ct. 1166. Because a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts," 394 U.S. at 466, 89 S.Ct. at 1171, the judge, in order to comply with Rule 11, must not only inquire into the defendant's understanding of the nature of

the charges and the consequences of the plea, but must also "develop, *on the record,* the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge." Santobello v. New York, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (footnote omitted; emphasis in original); see also United States v. Navedo, 516 F.2d 293–297 (2d Cir. Mar. 17, 1975); Irizarry v. United States, 508 F.2d 960, 967 (2d Cir. 1974); Manley v. United States, 432 F.2d 1241, 1244 (2d Cir. 1970) (en banc). On the record before us here, it is clear that there was no factual basis to support appellant's plea.

■ Count Three of the indictment charged Rizzo with violating 18 U.S.C. § 1951. The elements of an offense under 18 U.S.C. § 1951 are (1) interference with commerce in any way or degree and (2) extortion. See, e. g., Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Extortion consists of "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The element of actual or threatened force or violence, or fear, is essential to the crime. See, e. g., United States v. Billingsley, 474 F.2d 63, 66 (6th Cir.), cert. denied, 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973); United States v. Tropiano, 418 F.2d 1069, 1081 (2d Cir. 1969), cert. denied, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970); United States v. Tolub, 309 F.2d 286, 289 (2d Cir. 1962); Nick v. United States, 122 F.2d 660, 671 (8th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941). Yet nowhere on the face of the record does this essential element of use of force, violence or fear appear.

■ Not only is a factual basis for the essential element of the threatened use of force, violence or fear entirely absent from the record, but every indication on the record points toward a contrary con-

---

5. Rizzo had pleaded guilty to certain other offenses and had requested that all cases be referred to one judge for sentencing.

clusion. Rizzo described Calamaras as "beyond the point of a casual friend" and "more or less like my father"; there is no admission on the record as to threats by Rizzo himself and although Rizzo admitted that he had requested Crispino and Marino to collect money from Calamaras, he vigorously asserted that "[h]ow they collected the money, I was unaware of it. I was unaware of Mr. Cr[i]spino ever threatening this man because I would never allow it and I was also unaware of Mr. Marino threatening this man." Thus, at the very moment of pleading Rizzo in effect negated his plea by his vehement denials of any knowledge of the use of threats of force and his protestations that he would not allow such threats to be made against his "dear friend" Calamaras. As has been pointed out by the Fifth Circuit, a disclaimer of knowledge of an essential element of the crime "appears more closely akin to a protestation of innocence than [to] an expression of guilt." Hulsey v. United States, 369 F.2d 284, 287 (5th Cir. 1966). Here, as in *Hulsey,*

"[i]t would have been a simple matter for the trial court, when confronted with such equivocal response, to delay accepting the plea until further inquiry clearly established that the accused understood the elements of the crime charged . . . and was willing to enter an unequivocal admission of guilt." Id.

While we agree with the government's assertion that the reading of the indictment coupled with the defendant's admission that he committed the acts charged therein may, in some instances, satisfy the factual basis requirement, Irizarry v. United States, supra, at 968, n.9, this is not such a case. Not only did the district court fail to read the indictment,

merely paraphrasing it, but Rizzo did not unequivocally admit that he committed the acts charged therein, stating only that "I understand my role in that." In view of Rizzo's immediately subsequent denials of the use of threats of force, this ambiguous statement is insufficient to meet the factual basis standard set forth in United States v. Steele, 413 F.2d 967, 969 (2d Cir. 1969) and approved in *Irizarry,* 508 F.2d 968, n.9, which makes it clear that

"particularly where more than one defendant is charged, a sufficient statement of the acts and intent of the particular defendant, what the defendant did and intended, is necessary to an intelligent determination of whether there was a factual basis for the plea."

See also McCarthy v. United States, supra, 394 U.S. at 470, 89 S.Ct. 1166; United States v. Navedo, supra.

The factual basis requirement is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." F.R.Cr.P. 11, Notes of Advisory Committee on Criminal Rules. See also McCarthy v. United States, supra, 394 U.S. at 467, 89 S.Ct. 1166. In this case the conduct which Rizzo admitted was not sufficient to constitute the offense charged in the indictment to which he pleaded guilty; under these circumstances it was the obligation of the district judge to refuse to accept his guilty plea. See United States v. Navedo, supra, at 297–298.

The order of the district court is reversed and the case remanded so that appellant may be given an opportunity to replead.