### In re Gerald Dunham

[479 A.2d 144]

No. 83-418

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed June 1, 1984

*Stern & Mayhew, P.C.,* Woodstock, for Petitioner-Appellant.

*John J. Easton, Jr.,* Attorney General, *Marilyn R. Skoglund,* Assistant Attorney General, Montpelier, *James D. McKnight,* Orange County State's Attorney, and *Douglas Cohen,* Law Clerk (On the Brief), Chelsea, for Respondent-Appellee.

**Underwood, J.** Petitioner, Gerald Dunham, appeals the order of the Orange Superior Court denying him the post-conviction relief he requested pursuant to 13 V.S.A. § 7131. In his petition he sought to have his sentence vacated; he also sought permission to withdraw his plea of guilty to commission of the crime of second degree murder and the right to enter a new plea. The superior court concluded that petitioner had failed to show a constitutional defect, amounting to a complete miscarriage of justice, during the V.R.Cr.P. 11 proceedings conducted by the district court at the time petitioner changed his plea pursuant to a plea bargain agreement.

The facts are not significantly in dispute. On November 1, 1974, petitioner was charged with the first degree murder of Byron Nutbrown. Also charged with the same murder was

one Ernest Harvey. On February 22, 1975, petitioner changed his plea to guilty of second degree murder in exchange for his testimony against Harvey and an agreed upon sentence. This was pursuant to a written plea agreement which was submitted to the court. Thus, petitioner was never charged with second degree murder but entered his plea to it as a lesser included offense of first degree murder.

The events allegedly constituting the offense were read into the record at the change of plea hearing by the prosecutor. Petitioner and his attorneys were present. The prosecutor explained to the court how petitioner, Nutbrown, Harvey and one George Kiblin had been involved in an attempted burglary in New Hampshire, after which Harvey apparently became concerned that Nutbrown might talk to the police. Petitioner and Kiblin were driven by petitioner's wife to an abandoned house in Washington, Vermont, where they were later joined by Harvey and Nutbrown. Kiblin removed some shovels and plastic from Harvey's car and then departed in that vehicle. As Kiblin drove away, he saw Harvey with his arm around Nutbrown's neck.

After the prosecutor had recounted the events up to this point, the defendant was placed under oath and examined by his attorney. He testified as follows:

Q. Now taking your time, in your own words would you please describe to the Court what occurred after Mr. Kiblin drove away?

A. Mr. Harvey was standing with his arm around Byron Nutbrown's neck, and eventually they fell to the ground.

Q. Did he do anything in addition to having his arm around his neck?

A. He had his hand around his mouth and his nose.

Q. What happened after they fell to the ground?

A. Byron Nutbrown moved around for a short period of time, then he stopped moving.

Q. And where were you while this was going on?

A. I was standing around seven or eight feet away.

Q. And did there come a time when you approached Mr. Harvey and Byron Nutbrown?

A. Yes.

Q. And what occurred then?

A. I bent over and I felt of Byron Nutbrown's pulse and there wasn't any pulse, and I indicated to Mr. Harvey that there wasn't any pulse, and he then said, "Let's get him out of here."

After the court questioned petitioner about the details of how Nutbrown's body was buried, the prosecutor made the following statement to the court.

This Respondent has admitted his guilt of second degree murder, one of the elements of which is the element of willfulness. I don't think his testimony here today has established willfulness. We think he should be inquired of whether or not he knew what was going to take place before he went there in order to establish his willfulness in being there at a place which resulted in the death of Brian [sic] Nutbrown.

The rest of the plea change hearing involved matters not relevant to this appeal. The transcript discloses no further questioning of petitioner about his state of mind concerning the element of willfulness.

"Wilful" as used in 13 V.S.A. § 2301 (murder defined) indicates that intent is an element of the crime of second degree murder. In discussing first degree murder, we have held that "proof of murderous intent" is involved. *State* v. *Girouard*, 135 Vt. 123, 138, 373 A.2d 836, 846 (1977). Long ago, we held that it was the lack of premeditation which distinguishes first degree from second degree murder. *State* v. *Bradley*, 64 Vt. 466, 472, 24 A. 1053 (1892); *State* v. *Carr*, 53 Vt. 37, 46–47 (1880). We have reiterated this principle more recently. *State* v. *Barrett*, 130 Vt. 197, 199, 290 A.2d 14, 15 (1972). This is in accord with the majority of American jurisdictions. W. Lafave & A. Scott, Criminal Law 562–68 (1972); 40 C.J.S. *Homicide* § 35, at 895. We have also held that, unless the legislature specifically provides otherwise, "a crime is composed of an act and an intent, which concur at a point in time." *State* v. *Hanson*, 141 Vt. 228, 232, 446 A.2d 372, 374 (1982) (construing larceny statute). Thus, per-

haps we state the obvious when we note that murder, whether first or second degree, requires an intent to kill, and the "wilful" element of 13 V.S.A. § 2301 denotes that intent.

The plea change hearing was, of course, subject to the requirements of V.R.Cr.P. 11. There appears to be no dispute that all parts of the rule were complied with except 11(f), which provides as follows: "Notwithstanding the acceptance of a plea of guilty, the court should not enter judgment upon a plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

Petitioner argues that Rule 11(f) was not fully complied with and that this constituted a fundamental error resulting in a complete miscarriage of justice. The State argues that this was a mere technical violation of Rule 11, and that petitioner has demonstrated no prejudice because of it.

The concept of a "technical violation" of Rule 11 stems from the United States Supreme Court decision *United States* v. *Timmreck,* 441 U.S. 780 (1979). The United States Supreme Court held that a failure to describe a detail of the maximum sentence, without an allegation of prejudice, could not be raised by way of collateral attack. Similarly, our Court has recently held that "[t]echnical or formal violations [of Rule 11(c)] will not release a defendant from his guilty plea unless there is a showing of prejudice to the defendant." *In re Hall,* 143 Vt. 590, 596, 469 A.2d 756, 759 (1983). In *Hall,* the lower court failed to inform the defendant of the minimum and maximum penalties involved and that he was waiving his right to a jury trial, in violation of Rule 11(c)(2) and (4) respectively.

Just recently, we have also held that a failure to explain the nature of the charges, 11(c)(1), and the minimum and maximum penalties, 11(c)(2), was a technical violation which required a showing of prejudice. *In re Bentley,* 144 Vt. 404, 477 A.2d 980 (1984). Thus, *Timmreck, Hall and Bentley* all involved one or two omissions in the formal requirements of Rule 11(c). In the instant appeal, we have a failure to comply fully with the requirement of Rule 11(f): the record discloses no factual basis for the willful element of second degree murder.

In *McCarthy* v. *United States,* 394 U.S. 459, 466 (1969), the United States Supreme Court observed that "because a guilty plea is an admission of *all the elements of a formal criminal charge,* it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (Emphasis added.) Thus, a violation of Rule 11(f) goes directly to the voluntariness of the plea as articulated in *Boykin* v. *Alabama,* 395 U.S. 238 (1969). While *McCarthy* involved a direct appeal rather than a collateral attack, that does not diminish its value in evaluating the voluntariness of a guilty plea. *Carreon* v. *United States,* 578 F.2d 176, 179 (7th Cir. 1978).

In *Carreon,* the court allowed the defendant to withdraw his plea on collateral attack, 28 U.S.C. § 2255, because the lower court failed to question him about the facts underlying a possible defense of entrapment. 578 F.2d at 179. The defendant's attorney had represented to the court that he and the defendant had discussed all possible defenses and that the defendant was aware of them. *Id.* at 178. The court, however, felt that "[u]nder the circumstances it was not enough merely to rely on defense counsel's statement that his client had been informed about possible defenses . . . . Rule 11 requires that the judge 'develop, *on the record,* the factual basis for the plea . . . .' " *Id.* (quoting *Santobello* v. *New York,* 404 U.S. 257, 261 (1971)). Furthermore, defendant had attempted to plead guilty the day before, but a different judge was disturbed by the possible entrapment issue and did not accept the plea. The *Carreon* court labeled this a " 'danger signal' " which required the court to " 'be especially careful in discharging [its] duties under Rule 11.' " *Id.* at 179 (quoting *United States* v. *Davis,* 516 F.2d 574, 578 (7th Cir. 1975)). In the instant case, there was an even clearer "danger signal" when the prosecutor specifically called to the trial court's attention that there was an insufficient factual basis on the record to establish willfulness, or the intent to commit the crime of second degree murder.

In *Rizzo* v. *United States,* 516 F.2d 789 (2d Cir. 1975), the defendant entered a plea of guilty to conspiracy to use extortion as a means to collect a debt; defendant was indicted with two co-defendants. *Id.* at 790. Almost a year after sentence was pronounced, defendant collaterally attacked the plea alleg-

ing that it was involuntary because there was no factual basis for an element which required actual or threatened force or violence. *Id.* at 793. In *Rizzo,* the court observed that:

> *"particularly where more than one defendant is charged,* a sufficient statement of the acts and intent of the particular defendant, what the defendant did and intended, is necessary to an intelligent determination of whether there was a factual basis for the plea."

*Id.* at 794 (quoting *United States* v. *Steele,* 413 F.2d 967, 969 (2d Cir. 1969) (emphasis added)); accord *Irizarry* v. *United States,* 508 F.2d 960, 968 n.9 (2d Cir. 1974).

██ The State would have us distinguish *Rizzo* because there the defendant himself spoke and suggested that the victim of the alleged extortion was a close friend. The defendant also denied knowledge or condonation of any threats of force against the victim. *Rizzo, supra,* 516 F.2d at 792–93. We recognize that the instant case did not involve equivocal or contrary statements by the defendant, but rather an absence of any statements of facts concerning willfulness by the defendant or anyone else. We are unwilling, however, to infer the requisite mental state, willfulness, from a silent record. See *Boykin* v. *Alabama, supra,* 395 U.S. at 243 (cannot presume waiver of privilege against self-incrimination, right to jury trial and right to confront one's accusers from silent record). There must be an adequate factual basis for all elements of the charge developed on the record. *Santobello, supra,* 404 U.S. at 261; *McCarthy, supra,* 394 U.S. at 466; *Carreon, supra,* 578 F.2d at 179; see also *United States* v. *Johnson,* 612 F.2d 305, 309 (7th Cir. 1980) (court did not ensure that defendant either contributed to shooting or intended to kill victim, thus on collateral attack defendant allowed to withdraw guilty plea to manslaughter). Petitioner's mere presence as a bystander at the scene of the crime, by itself, is not enough to establish the element of intent to commit the crime. *State* v. *Carter,* 138 Vt. 264, 269, 415 A.2d 185, 188 (1980); *State* v. *Mecier,* 126 Vt. 260, 262, 227 A.2d 298, 299 (1967); see *State* v. *Ballou,* 127 Vt. 1, 6, 238 A.2d 658, 662 (1968) (there is more than "mere presence" where defendant and associates had agreed and conspired to commit crime).

Since the defendant's understanding of the elements of an offense as applied to the facts goes directly to the voluntariness of his plea, the record must affirmatively show sufficient facts to satisfy each element of an offense. The requirement of V.R.Cr.P. 11(f) involves an understanding by the defendant that the conduct admitted violates the law as explained to him by the court. Absent this, no matter how perfectly the other parts of Rule 11 have been observed, we cannot find a voluntary plea. Unlike collateral review of alleged defects under V.R.Cr.P. 11(c), which places a burden of proving prejudice upon the defendant, collateral attacks for defects under Rule 11(f) require no showing of prejudice.*

Our review of the instant record discloses no factual basis for the willfulness element necessary for the trial court to accept a voluntary plea of guilty to second degree murder. To allow such a plea to stand would work a complete miscarriage of justice.

*The Orange County Superior Court's order of July 19, 1983, is reversed. The Orange County Superior Court's judgment on the plea of guilty, dated February 22, 1975, and sentence are vacated with leave to defendant to withdraw his plea of guilty.*

---

* Similarly, we will not look to the totality of the plea change hearing for substantial compliance with Rule 11 when there is a collateral challenge for lack of compliance with Rule 11(f). See *Bentley, supra,* and *Hall, supra.*