*Jones v. State of Vermont*, No. 873-8-12 Cncv (Mello, J., July 10, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No. 873-8-12 Cncv |

| | |
|---|---|
| Daniel Jones, | |
| Plaintiff | |
| v. | |
| State of Vermont, | |
| Defendant | |

## Opinion and Order Denying Petitioner's Motion for Summary Judgment and Granting Defendant's Motion for Summary Judgment.

### I.     INTRODUCTION & STANDARD OF REVIEW

This is an action for post-conviction relief (PCR) filed by Mr. Daniel Jones, Petitioner, regarding his 2004 conviction for first-degree felony murder. Mr. Jones has moved for summary judgment, arguing that the trial court did not obtain sufficient factual admissions under Criminal Rule 11(f) to accept his guilty plea. The state has opposed and, in the same briefing, requested summary judgment in its favor on this issue. Def's Opp. at 11. Where there is no material dispute of fact and the moving party is entitled to judgment as a matter of law, summary judgment must be granted. V.R.C.P. 56(c)(3).

Here the facts surrounding Mr. Jones' guilty-plea colloquy are undisputed; indeed, the transcript speaks for itself. The only material disputes are how the facts are to be interpreted and whether the court may consider additional facts, incorporated by reference in the plea hearing, in deciding whether there was a sufficient factual basis for the court to accept Plaintiff's guilty plea. The significance of undisputed facts and deciding whether additional facts are material to the issues raised are questions of law. Therefore, the court will decide this motion by applying the undisputed facts to Vermont law governing Rule 11(f).

### II.     UNDISPUTED FACTS

Daniel Jones pleaded guilty to felony murder on September 3, 2004. He received a sentence of 27 years to life, which was the maximum that the state agreed to advocate for at his sentencing hearing. SUMF ¶1. At the beginning of the change of plea hearing, Mr. Jones remarked that he was "stressed out" and "nervous" and he characterized the murder to which he was possibly pleading guilty as "an accident." *Id*. at ¶2. After a recess to consult with counsel over whether to accept the plea or proceed to trial within the next two weeks, Judge Joseph, who presided over the change of plea hearing, read the charge: on October 9, 2002, in Burlington, Mr.

*Jones v. State of Vermont*, No. 873-8-12 Cncv (Mello, J., July 10, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

Jones "willfully killed with wanton disregard for the value of human life… L. Rahan Whitely (sic), in attempting to perpetuate a robbery." *Id*. at ¶3. Judge Joseph then asked Mr. Jones what his plea was to this charge, to which Mr. Jones responded "guilty." *Id*. at ¶4. The following exchange then occurred regarding the factual basis for the charge of felony murder:

> COURT: The affidavit filed here by Officer Dumont says that on the date in question, that is, October 9th, at approximately one o'clock in the morning that you went to a residence in Burlington where in cooperation with others, you attempted to rob one L. Rahan Whitely. This attempt was made through use of handguns. You allegedly had one of those handguns. And that during the course of this robbery attempt Mr. Whitely was shot to death. Is that what happened?

> DEFENDANT: Yes.

> COURT: Okay, Mr. Williams, you stipulate that the affidavit of Officer Dumont makes out a factual basis for a plea of guilty to the charge?

> DEFENSE: I do, Your Honor; and I also wanted to add that we've done extensive discovery in this case, depositions. We've been through all of the photographs. We've inspected the car. We've looked at all of the – I'm getting a brain cramp.

> COURT: Physical evidence?

> DEFENSE: -- all the physical evidence, yes, including the firearm examination, and I believe that there is factual basis for the charge.

*Id*. at ¶5. Mr. Jones' plea appears to have been the product of an arm's length negotiation: based on the various charges he faced a maximum of life in prison with a presumptive minimum term of 35 years for the murder count, and five years for a second charge of escape while on furlough. Def's SUMF at ¶¶1-2. The affidavit of probable cause included witness statements and Mr. Jones' statement to police on October 10. *Id*. at ¶4. The affidavit alleged that Mr. Jones and several co-defendants had planned to rob the victim at a pre-arranged meeting to purchase cocaine. *Id*. at ¶5. Mr. Jones' younger brother, Jessie Jones, provided a statement that was included in the affidavit. According to Jessie's statement, Daniel Jones, while he and one of his co-defendants were holding handguns, shortly prior to the shooting, said that they were planning to rob the victim. *Id*. at ¶7. Soon thereafter, Jessie heard gunshots, saw the victim's car drive off, and then saw Daniel. *Id*. At that point, Daniel told Jessie "I think I shot him in the back" and proceeded to describe what had happened: after sneaking up on the victim, who was seated in his car, he thought he heard a gunshot. *Id*. Thinking the victim was shooting at him, Daniel shot his gun at the car while backing away. *Id*. In April 2004, Judge Joseph presided over an evidentiary hearing on the merits to review bail. There, the defense conceded that Mr. Jones brought a gun

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

with him with the intent to rob the victim but contested that he had a wanton disregard for the value of human life. *Id*. at ¶10. The defense also raised the issue of self-defense because of a purported bullet that was shot at Mr. Jones from the car, prior to Mr. Jones discharging his gun. *Id*. The state contested the existence of this bullet. Det. Yustin, a firearms expert, opined, in testimony that Judge Joseph credited in his bail opinion, that no bullets were shot from inside the victim's vehicle. *Id*. at ¶12.

## III.    VERMONT RULE OF CRIMINAL PROCEDURE 11(f)

Rule of criminal procedure 11(f) says that when a criminal defendant chooses to plead guilty, before the court may accept it and enter judgment, the court must "mak[e] such inquiry as shall satisfy it that there is a factual basis for the plea." V.R.Cr.P. 11(f). This is intended to prevent "false guilty pleas in situations where the defendant does not completely understand the elements of the charge or realize that he has a valid defense…" V.R.Cr.P. 11(f) – Reporter's Notes. A criminal defendant may petition for post-conviction relief for violations of Rule 11 because Rule 11 is intended to protect against due process violations. See 13 V.S.A. § 7131; Reporter's Notes – V.R.Cr.P. 11; *In re Kasper*, 145 Vt. 117, 121 (1984). Though a defendant need not show prejudice from a Rule 11(f) violation (*In re Dunham*, 144 Vt. 444, 451 (1984), state doctrine has been conflicted on the extent to which nominal violations of Rule 11 are reversible error.

However, two Vermont Supreme Court opinions issued last summer clarified the meaning of Rule 11(f), leading to a bonanza of attempts to reexamine old Vermont guilty pleas. See *In re Bridger*, 2017 VT 79; *In re Gabree*, 2017 VT 84. Before these opinions issued, under one line of cases, "substantial compliance" with Rule 11(f)—admission of some facts of how the crime was committed, with the permissible reference to documents and stipulations to facts by counsel—sufficed. See *State v. Whitney*, 156 Vt. 301 (1991); *State v. Morrissette*, 170 Vt. 569 (1999); *State v. Riefenstahl*, 172 Vt. 597 (2001); *State v. Cleary*, 2003 VT 9, 175 Vt. 142. Under another line of cases, relied on by Mr. Jones here, it was said that a trial court must establish the existence of facts in support of each element of the offense on the record with the defendant. This is "strict compliance" with Rule 11(f). See *In re Dunham*, 144 Vt. 444, 450 (1984); *State v. Yates*, 169 Vt. 20 (1999); *In re Miller*, 2009 VT 36, 185 Vt. 550; *In re Stocks*, 2014 VT 27, 196 Vt. 160. Last summer, *Bridger* and *Gabree* adopted the *Stocks* line of cases requiring strict compliance, overturning the substantial compliance standard. *Bridger*, 2017 VT 79 at ¶14. These cases did not, however, decide whether to apply strict compliance to all previously-entered pleas. *Id*. at ¶¶59–60 (Eaton, J. dissenting). In response to an avalanche of PCRs in which criminal defendants have leaned on the newly-clarified, strict-compliance standard, the Supreme Court will decide the retroactivity question this year in four consolidated cases: *In re Kenneth Barber Jr.,* Dkt. No. 2015-451; *In re John Burke,* Dkt. No. 2016-277; *In re Danielle Rousseau,* Dkt No. 2016-241; *In re Theodore Smith*, Dkt No. 2016-159. Until that opinion issues, however, this court must project what the rule will be on retroactivity.

If a decision announces a "new rule" then it cannot be applied retroactively. *State v. White*, 2007 VT 113, ¶9. A new rule overrules or significantly alters a prior decision or "imposes a new obligation." *Id*. If a decision explicitly overrules an earlier holding it "obviously" imposes a new obligation. *Butler v. McKellar*, 494 U.S. 407, 412 (1990). And a case creates a new rule if the result "was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

Here Mr. Jones pleaded guilty in 2004. The court takes judicial notice that, according to the online judiciary docketing database, Mr. Jones' criminal conviction in Dkt. No. 6414-10-02 Cncr became final on June 5, 2006, when he stipulated to withdraw his appeal. Citing to *Stocks*, he argues for the court to impose a strict compliance Rule 11(f) standard. See Pltf's Mot. at 4 (citing *Stocks*, 2014 VT 27 at ¶14).[1] But *Stocks* was decided in 2014. In 2006, when his guilty plea became final on appeal, there were two cases of consequence to Mr. Jones' argument that Vermont Rule 11(f) required strict compliance: *In re Dunham*, 144 Vt. 444 (1984) and *State v. Yates*, 169 Vt. 20 (1999).

In *Dunham* the trial court accepted defendant's guilty plea to second degree murder. However, at the change of plea hearing, Mr. Dunham only admitted to witnessing his co-defendant commit murder; he admitted no facts to support a guilty plea to his own charge. See 144 Vt. at 446-47; 450 ("Petitioner's mere presence as a bystander at the scene of the crime, by itself, is not enough…"). A court's holding is a "determination of a matter of law *pivotal to [a court's] decision*." *Black's Law Dictionary*, 749 (8th ed. 2004) (emphasis supplied). *Obiter dictum* is Latin for "something said in passing." This is more commonly referred to as "dicta" which means a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." *Id*. at 1102. The *Dunham* Court's proclamation that Rule 11(f) demanded strict compliance[2] was textbook dicta. *Dunham* did not involve substantial or strict compliance with 11(f). Rather, it involved total non-compliance. See 144 Vt. at 446-47. Therefore, the holding in *Dunham*, properly construed, is that Rule 11(f) demands some quantum of compliance. The extent of acceptable 11(f) compliance greater than total abdication was not established by *Dunham*.

In *Yates* the defendant was charged with aggravated domestic assault of his ex-wife and simple assault of his ex-wife's boyfriend, Steve Machia. See 169 Vt. at 21, 23. The court's "full inquiry into the facts of the case" at the change of plea hearing was Mr. Yates' admission that he pulled a gun on Mr. Machia to scare Machia away after Mr. Machia choked Mr. Yates. *Id*. at 23.[3] As in *Dunham*, Mr. Yates did not admit to any facts supporting his charges. *Id*. at 24. This was a "*total*… violation" of Rule 11(f). *Id*. The Yates Court reversed the conviction, relying on *Dunham* as requiring strict 11(f) compliance.[4] But, yet again, the holding here, properly construed is that Rule 11(f) must be complied with to some extent.

---

[1] Mr. Jones has also cited to *Bridger* and *Gabree* and argued that they should be applied retroactively. See letter dated April 6, 2018. The Court's analysis on retroactivity applies to *Stocks, Bridger*, and *Gabree*.

[2] *Dunham* purported to hold that compliance with Rule 11(f) demanded that "the record affirmatively show sufficient facts to satisfy each element of an offense." 144 Vt. at 450.

[3] In *Yates* the trial court, quite correctly, remarked that these facts made out a defense to the assault charge (against Mr. Machia), not a factual basis for the charged offenses. See 169 Vt. at 24.

[4] "[T]he defendant [must] admit to and possess an understanding of the facts as they relate to the law for all elements of the charge or charges to which the defendant has pleaded." See 169 Vt. at 24 (citing *Dunham*, 144 Vt at 450).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

Thus, neither *Dunham* nor *Yates* established that partial 11(f) non-compliance is reversible error;[5] and therefore the court concludes that the cases issued at the time of Mr. Jones' case which Mr. Jones has relied on, do not establish the outer limit of acceptable Rule 11(f) compliance. But, the second line of cases, cited above, demonstrate that in 2006 less than full compliance was sometimes acceptable. See *Whitney*, 156 Vt. 301 (1991); *Morrissette*, 170 Vt. 569 (1999) (mem.); *Riefenstahl*, 172 Vt. 597 (2001) (mem.); *Cleary*, 2003 VT 9.

In *Whitney*, the defendant was a repeat-DUI-offender who challenged a prior DUI for lack of compliance with Rule 11(f). 156 Vt. at 301. The opinion does not clearly indicate the extent to which the trial court complied with Rule 11; the colloquy transcript is not directly quoted, nor does the opinion describe specifically what, if anything, Mr. Whitney admitted to at his colloquy. Nevertheless, the Supreme Court summarily held that Rule 11(f) was complied with where: (1) the court informed Whitney of the charge, (2) Whitney had previously been charged with the same offense (he had been convicted of yet another prior DUI), (3) the judge had examined the affidavit of the arresting officer, and (4) the affidavit was provided to Mr. Whitney. *Id*. at 303. This holding suggested that something less than a defendant's explicit admission, on the record at the colloquy, to facts supporting each element, sufficed.

Mr. Morrissette was also a repeat-DUI-offender attempting to invalidate a prior DUI that would otherwise enhance his sentence. 170 Vt. at 569. At the plea hearing, Morrissette "acknowledged receipt of the information" and "receipt of the affidavit of probable cause." *Id*. at 570. And, "through his attorney" he "stipulated to a factual basis for the charge based on the police officer's affidavit." *Id*. The Supreme Court held that this "substantial[ly] compli[ed]" with Rule 11(f), which was all that was needed to uphold the plea. *Id*. at 571 (contrasting the total failure to comply with 11(f) found in *Yates*).

Like *Morrissette* and *Whitney*, *Riefenstahl* is yet another appeal of a DUI conviction. 172 Vt. 597. At the colloquy, the trial judge inquired with "defendant's counsel whether he could use the affidavit of probable cause as the factual basis for the plea, to which counsel responded yes." *Id*. at 599. This stipulation by counsel, combined with the defendant's execution of waiver forms and a plea agreement, and defendant's acknowledgement that he understood those documents, constituted "substantial compliance" with Rule 11(f). *Id*.

Last, in *Cleary* the defendant pleaded guilty to attempted sexual assault and lewd and lascivious conduct. 175 Vt. at 144. The court asked defense counsel if Mr. Cleary was "conceding that there is a factual basis for the charges," to which defense counsel responded "yes." *Id*. at 171-72. Mr. Cleary admitted that he had read the affidavits or that they had been read to him. *Id*. And, Mr. Cleary's attorney later explained that "there was an attempted sexual assault, not a completed one as suggested in the affidavit." *Id*. at 153. This "stipulat[ion] to the facts," the Court held, in a 3-2 opinion, sufficed for Rule 11(f) compliance. *Id*.

---

[5] The *Yates* Court cited one other case, which is of little consequence here because it lacks factual specificity to determine whether it was a partial or complete non-compliance case. See *In re Kasper*, 145 Vt. 117, 120 (1984) (reversing because the colloquy transcript contained "only the most cursory and general reference to the charges against the defendant."). Because there is nothing further in *Kasper* explaining what, if any, factual admissions were made by the defendant on the record, it is of little use in analyzing the extent to which 11(f) must be followed to avoid reversible error. See 145 Vt. at 120.

*Jones v. State of Vermont*, No. 873-8-12 Cncv (Mello, J., July 10, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

The *Whitney* through *Cleary* line of cases make clear what *Dunham* and *Yates* holdings did not: that some quantum less than total compliance with Rule 11(f) was acceptable in 2006. Retroactive application of the new standard, announced in *Bridger, Gabree*, and *Stocks* therefore, is not appropriate in Mr. Jones' case.

Here, Mr. Jones admitted to having gone to a residence in Burlington to commit a robbery with the use of a handgun. He also admitted that during the course of this robbery, another man, the victim, was shot and killed. Additionally, his attorney stipulated that the affidavit of probable cause contained a factual basis for the charge of felony murder. And, his attorney added, that "we" did "extensive discovery" including "depositions," the review of "all of the photographs," inspecting the car in which the homicide occurred, and reviewed the physical evidence, including a firearm examination, and counsel "believe[d]" a factual basis for the charge existed based on all of this information. SUMF ¶5.

Petitioner makes two arguments: (1) that the court could not rely on the incorporation of facts by reference to the affidavit or to the rest of the discovery, and; (2) the set of facts that he admitted to did not include that the felony murder happened while Mr. Jones had a wanton disregard for human life, an essential element (*State v. Bacon*, 163 Vt. 279, 291 (1995).).

As explained above, however, under the *Whitney*, *Morrissette, Riefenstahl,* and *Cleary* line of cases, the trial court could rely, to some extent, on facts contained in the affidavit of probable cause upon stipulation by the defendant or his attorney. And, unlike those cases, here Mr. Jones explicitly admitted to facts that support each essential element of the charge other than the *mens rea*. With the affidavit, there was a sufficient factual basis for the charge to satisfy the change-of-plea court. Add to that, as stipulated, the other evidence in "discovery" and the sufficiency of the facts supporting the plea would be manifest: there was no physical evidence that Mr. Jones was shot at first, and, in the opinion of the firearms expert, no such shot was fired. See Def's SUMF at ¶¶10; 12.

Even assuming, however, that the change-of-plea court could not consider any facts other than those admitted by Mr. Jones at the hearing, his admission still formed a sufficient factual basis. At trial, a fact finder may draw reasonable inferences about intent from an accused's actions; this is often how cases are decided because "intent is rarely proved by direct evidence." *State v. Cole*, 150 Vt. 453, 456 (1988). If a fact finder may rely on reasonable inferences from an accused's actions to determine intent, this court sees no reason that a change-of-plea court cannot do the same to satisfy itself that a factual basis exists for a guilty plea. Here, Mr. Jones admitted (1) that he planned to rob the victim at gunpoint, (2) that he attempted to do this by going to the victim's house armed with a handgun, and (3) during this attempted robbery, the victim was shot and killed. Reasonable inferences drawn therefrom form a factual basis for each element of the offense of felony murder. See SUMF at ¶5; 13 V.S.A. § 2301; Vermont Model Criminal Jury Instructions § 24-052 ((1) defendant or an accomplice; (2) caused death of the victim; (3) the killing was unlawful; (4) the killing occurred while defendant was committing an enumerated offense, here an attempted robbery, and; (5) at the time of defendant's participation in the enumerated offense, defendant acted with a wanton disregard for human life.). It is reasonable to infer that Mr. Jones wantonly disregarded human life when he attempted to rob the victim while armed with a handgun. And Mr. Jones was informed of the mens rea element during his guilty plea. SUMF at ¶¶3-4. So, not only could the court infer that Mr. Jones held the requisite mens

*Jones v. State of Vermont*, No. 873-8-12 Cncv (Mello, J., July 10, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

rea, but it also had informed him that the state had to prove that mental state.[6] The court complied with Rule 11(f) under any standard, but it obviously did so under the *Cleary* et. al. substantial compliance standard, which was in effect in 2006.

Petitioner attempts to argue that he disclaimed a guilty intent when, prior to taking his plea, he expressed anxiety to the court about pleading guilty to an "accident." This is one reasonable interpretation of his comment. SUMF ¶2. But it is not the only one. It also would have been reasonable for the change-of-plea court to interpret this statement as Petitioner's position before he decided to plead guilty. Indeed, this statement occurred before a recess in which Petitioner and his attorney discussed him taking a plea, and after which Petitioner decided to plead guilty. *Id*. It would have been eminently reasonable for the court to infer that Petitioner's guilty plea after the recess was a reasoned decision to change his mind, take responsibility and disclaim his prior defense.

Also, this statement could simply have meant that it was not Petitioner's conscious purpose to kill on that fateful day. That would not, however, negate a felony murder charge, if, as Petitioner admitted when he pleaded guilty, he wantonly disregarded human life in his commission of a felony. And, as explained above, it would be reasonable for anyone, including the change of plea court, to make such a determination from the admission that Petitioner used a handgun to commit attempted robbery at a residence. Because a reasonable jury could convict on these facts, a change-of-plea court could be satisfied by them as factual support for the charge.[7]

## IV.   ORDER

The trial court did not violate Rule 11(f) when it accepted Mr. Jones' guilty plea. Therefore, Petitioner's motion for summary judgment is denied. For the same reason, the state's cross motion for summary judgment is granted.

SO ORDERED this 10th day of July, 2018

_____

Robert A. Mello, Superior Judge

---

[6] And, as permitted by the *Cleary* line of cases, the court reasonably could have believed that Mr. Jones was intimately familiar with the mens rea requirement for felony murder because that issue was contested with some rigor about 5 months earlier in a bail hearing. Def's SUMF ¶10.

[7] The court notes that the true calculus that a defendant deciding to plead guilty must engage in follows this reasoning: what is the risk that the state's evidence could lead a reasonable juror to convict on the facts and is the potential exposure from a guilty verdict at trial, discounted by the risk of conviction, greater than the state's guilty plea offer? Because Petitioner admitted facts to Judge Joseph on which a reasonable juror could have convicted him, it was not error for Judge Joseph to accept Petitioner's plea, knowing that this was the decision Petitioner faced.