VERMONT SUPREME COURT                                Case No.     24-AP-395



109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2025

State of Vermont v. Jamie Prue\*         }    APPEALED FROM:
                                          }    Superior Court, Orleans Unit,
                                          }    Criminal Division
                                          }    CASE NO. 24-CR-11301
                                               Trial Judge: Rory T. Thibault

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction of disturbing the peace by phone. Among other things, he argues that his plea colloquy did not satisfy Vermont Rule of Criminal Procedure 11(f). We agree and therefore reverse and remand.

## I. Background

In October 2024, defendant was charged with one count of disturbing the peace by phone in violation of 13 V.S.A. § 1027(a). The supporting affidavit alleged that defendant sent a Department for Children and Families (DCF) worker a series of "threatening messages" after she informed him of the results of a paternity test. It also incorporated what the affiant described as screenshots of defendant's text messages to the DCF worker.

At defendant's arraignment, his attorney argued that the State's charge was not supported by probable cause because the messages reproduced in the affidavit were not threatening and were likely constitutionally protected speech. The court explained that the "focus" of its probable-cause finding was a single message included in the affidavit, which read: "KISS MY ASS BITCH AND YIURE LUCKY I DONT HUNT YOU DOWN. IM A VET AND IM CAPABLE. MAYBE YOU SHOULD MOVE YOUR FAT ASS SOMEWGERE ELSE." The court reasoned that this message, viewed in the light most favorable to the State, "would appear to be threatening to some extent." Defense counsel subsequently conceded that this message "may" support the court's finding of probable cause.

The court next observed that the State "charged this under two theories." The information alleged that defendant:

with intent to terrify, intimidate, threaten, harass[,] or annoy, made contact by means of a telephonic or other electronic communication with another and made any request, suggestion, or proposal which was obscene, lewd, lascivious, or indecent; or threatened to inflict injury or physical harm to the person or property of any person; or disturbed, or attempted to disturb, by repeated telephone calls or other electronic communications, whether or not conversation ensued, the peace, quiet[,] or right of privacy of any person at the place where the communication or communications was received.

The court explained that on the basis of the facts alleged, the State could attempt to prove that defendant violated § 1027(a) by—"with intent to terrify, intimidate, threaten, harass, or annoy"—making contact with the DCF worker by means of electronic communication and either: threatening to inflict injury or physical harm to her person or property; or disturbing, or attempting to disturb, by repeated electronic communication, her peace, quiet, or right of privacy. Thus, the court noted, "just the barrage of messages unto itself could be an independent basis for the State to try to prove this before a jury."

In November 2024, defendant filed notice of his intention to enter an open plea of guilty to disturbing the peace by phone.[1]  His change-of-plea hearing was held later the same month.

At that hearing, the court again noted the existence of elective language in the charging instrument and asked the State to clarify which of the two theories it was proceeding under: "whether this is multiple efforts of communication that disturb the peace and quiet and right of privacy of the person, or . . . whether this would be a threat to inflict injury or physical harm." The court suggested that the "repeated-communications" theory "might be a little bit easier for a factual basis" as compared with the "threat" theory because "[t]he true-threats doctrine applies here."[2]  The State agreed to move forward under the repeated-communications theory.

The court then read the essential elements of the charge—thus narrowed—to defendant. It explained that if the case were to go to trial, the State would have to show, as relevant here, that defendant: (1) had a specific intent "to terrify, intimidate, threaten, harass, or annoy another person," noting that "I think the theory here is that you were acting to either harass or annoy under the circumstances"; and (2) that the "peace and quiet or right of privacy of the person where that communication was received was disturbed." The court subsequently requested that the State provide a factual basis. The prosecutor stated that after the DCF worker informed defendant about the results of a paternity test,

---

[1]  An "open plea" is a guilty plea entered by a defendant "without reaching any plea agreement with the prosecution." United States v. Akande, 956 F.3d 257, 259 (4th Cir. 2020).

[2]  Although the First Amendment to the U.S. Constitution prohibits laws abridging freedom of speech, "among the categories of expression states may regulate consistent with the Constitution are 'true threats,' defined to 'encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' " State v. Noll, 2018 VT 106, ¶ 24, 208 Vt. 474 (quoting Virginia v. Black, 538 U.S. 343, 359 (2003) (plurality opinion)).

she began to receive threatening text messages, which are incorporated in [the] affidavit of probable cause and contain language that was certainly threatening and intimidating, and language directly related to [the DCF worker's] residence.

The language in the text messages served to—and they were repeated. They were sent repeatedly . . . . That would be the State's support for the charge, as it disturbed, certainly disturbed [the DCF worker's] peace and privacy.

At this point, defendant's attorney interjected. She called the court's attention to their discussion at defendant's arraignment, again asserting that many of the things defendant said in his messages to the DCF worker "could be construed as free speech." Defense counsel acknowledged, however, that

there is one thing [defendant] said at the end of that in a text that the court pointed out to defense counsel, and defense counsel conceded. And so [defendant] was under the impression that he could plead guilty to the disturbing the peace by phone for that one statement, because that one statement went too far.

Defense counsel and the court agreed that the message at issue was the one in which defendant told the DCF worker, "you're lucky I don't hunt you down." The following exchange ensued:

DEFENSE COUNSEL: And so [defendant] and I talked about that, and he agrees. And that is what he's willing to enter a guilty plea to. But the rest of it, I would add to this record, whatever preceded that was all in dispute.

THE COURT: All right. So again, I thought the easiest theory to get through this was just to note that there's a string of probably thirty messages with zero response, which would be repeated attempts to—

DEFENSE COUNSEL: Yes.

THE COURT: —contact and disturb the peace of the person.

DEFENSE COUNSEL: Yes.

THE COURT: All right. So [defendant], with that in mind, do you agree that these communications were directed toward [the DCF worker] with an intent to harass or annoy her?

DEFENDANT: Yes, I do.

THE COURT: All right. At a minimum, it may have been one threat in there as well?

DEFENDANT: I have to—yeah. I have to see it.

3

> THE COURT: All right. And you agree that by sending her something like thirty to thirty-five messages without a response, that that was designed to disturb her peace and quiet and right to privacy wherever she was situated?
>
> DEFENDANT: I was very upset. Yes. I—yes.

Defendant then pleaded guilty to disturbing the peace by phone.

The court found that defendant's plea was made voluntarily and that "there was an adequate factual basis, based upon the review of the affidavit and some of the messages with the defendant and his admission to his intent and the content of the messages on the record." It therefore accepted defendant's plea and entered judgment. Defendant was sentenced to sixty-to-ninety days to serve.

This direct appeal followed.

## II. Discussion

Defendant argues that his plea colloquy did not satisfy Vermont Rule of Criminal Procedure 11(f), which prohibits the trial court from entering judgment on a plea of guilty "without making such inquiry as shall satisfy it that there is a factual basis for the plea." He further contends that because the court explained at his arraignment that its probable-cause finding was predicated on the single message that could be construed as threatening, it lacked the authority to enter a conviction on the repeated-communications theory. Finally, defendant asserts that entering a judgment of guilt under these circumstances violated his constitutional rights to due process and freedom of speech. The State does not agree that defendant's constitutional rights were abridged or that the plea was without lawful factual basis. However, it concedes that defendant's conviction should be reversed because the record does not affirmatively show that he understood the facts he was agreeing to or how they related to the law, as required to establish a lawful factual basis under Rule 11(f). We conclude that Rule 11(f) was not satisfied here and therefore reverse and remand without reaching defendant's remaining arguments.

We begin by clarifying the applicable standard of review. Defendant and the State both analyze the Rule 11(f) issue under the plain-error standard typically applied to unpreserved issues on appeal. See State v. Koons, 2011 VT 22, ¶ 11, 189 Vt. 285 (explaining that we review issues not raised below "solely for plain error," and under that standard, we consider whether there was an obvious error affecting substantial rights and prejudicing defendant). But while "Rule 11(f) challenges on direct appeal are reviewed for plain error, our standard for reviewing these claims on direct appeal is the same as that for collateral challenges." State v. Lizotte, 2018 VT 92, ¶ 40, 208 Vt. 240. Under that standard—first announced in In re Bridger—the record must demonstrate that defendant understood the facts as they relate to the law for all elements of the charge to which he pleaded guilty. 2017 VT 79, ¶ 24, 205 Vt. 380; see State v. Bowen, 2018 VT 87, ¶ 12, 208 Vt. 164 (holding that Bridger standard applies to unpreserved Rule 11(f) challenges on direct appeal). No showing of prejudice is required, "because a defendant's understanding of the elements of an offense as they relate to the facts goes directly to the voluntariness of his plea." Bowen, 2018 VT 87, ¶¶ 7, 10, 208 Vt. 164 (quotation omitted); see In re Dunham, 144 Vt. 444, 449 (1984) (" '[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant

4

possess[es] an understanding of the law in relation to the facts.' " (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969))). As a result, "in Rule 11(f) direct-appeal challenges, the defendant need not demonstrate the typical plain-error elements." Lizotte, 2018 VT 92, ¶ 40.

Thus, the question on appeal is whether the record reflects "an adequate factual basis sufficient to demonstrate voluntariness"—in other words, "some recitation on the record of the facts underlying the charge and some admission by the defendant to those facts." Bridger, 2017 VT 79, ¶ 21 (quotation omitted) (footnote omitted); see In re Gabree, 2017 VT 84, ¶ 10, 205 Vt. 478 (explaining that while there is "no particular formula" to satisfy the Bridger standard, the defendant "must, in some manner, personally admit to the factual basis for the charges").

We agree with defendant and the State. In this case, the record does not affirmatively show that defendant understood the facts as they related to the law for all elements of the charge to which he pleaded guilty. Bridger, 2017 VT 79, ¶ 24. As the court and the parties recognized throughout the proceedings below, the factual basis for defendant's plea could arguably have been established in one of two ways. When the court explained the elements of the charge to defendant and the prosecutor provided a factual basis on the record, both did so under the assumption that defendant would admit to disturbing or attempting to disturb the peace, quiet, or right of privacy of the DCF worker through repeated communications. But defendant's attorney then clarified that defendant was willing to plead guilty only on the alternative basis that just one of his messages constituted a threat under 13 V.S.A. § 1027(a). As noted above, defense counsel explained that "a lot of the stuff [defendant] said . . . could be construed as free speech," and that while defendant would agree that the single message was threatening, "whatever preceded that was all in dispute."

During the colloquy immediately following this exchange, however, the court elicited defendant's admission to the following: communications were directed toward the DCF worker with an intent to harass or annoy her, and defendant's actions in sending her numerous messages without receiving a response were "designed to disturb her peace and quiet and right to privacy wherever she was situated." The court did ask defendant whether, "[a]t a minimum, it may have been one threat in there as well?" Defendant's response, however, was ambiguous. He replied, "I have to see it."

This record does not suffice to demonstrate that defendant understood the facts as they related to the law for all elements of the charge. Bridger, 2017 VT 79, ¶ 24. It is not clear that the parties and the court ever arrived at a mutual understanding as to which of the two potential theories defendant's plea was entered under. Cf. In re Barber, 2018 VT 78, ¶ 34, 208 Vt. 77 (noting that plea colloquy satisfied Rule 11(f) even under post-Bridger standard because while court did not offer "overly detailed recitation of all the facts in the information, the charge was not complex and the facts set forth established all of the elements of the crime" (emphasis added)). Indeed, it appears that the court elicited defendant's agreement to facts supporting the repeated-communications theory notwithstanding his attorney's assertion that this was disputed. See In re Miller, 2009 VT 36, ¶ 9, 185 Vt. 550 ("Rule 11(f) is intended to prevent the entry of false guilty pleas in situations where, for example, the defendant does not completely understand the elements of the charge."). And while the court also asked defendant to admit to sending a threatening message—the theory under which defendant had indicated he was willing to enter his plea—defendant never affirmatively admitted to doing so. See Gabree, 2017 VT 84, ¶ 10 (explaining that to satisfy Rule 11(f), "defendant must, in some manner, personally admit to the factual basis for the charges" (emphasis added)). The record does not reflect that defendant

understood "that the conduct admitted violate[d] the law as explained to him by the court." Dunham, 144 Vt. at 451.

In the absence of an adequate factual basis, "no matter how perfectly the other parts of Rule 11 have been observed, we cannot find a voluntary plea." Id. Because the record does not demonstrate that Rule 11(f) was satisfied here, we reverse and remand for further proceedings. See, e.g., State v. Rillo, 2020 VT 82, ¶ 13, 213 Vt. 193.

Reversed and remanded.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice